FORT SMITH & VAN BUREN BRIDGE DISTRICT *v.* SCOTT.

## Opinion delivered February 16, 1914.

1. DEDICATION—RESERVATIONS.—A person who gives any portion of his lands for use as public streets may confine the dedication thereof within such limits as he may choose to fix.  (Page 454.)

2. DEDICATION—INTENTION OF OWNER.—The question whether the owner of land intended to dedicate his land for public use, is one of fact, and the intention of the land owner is determined from his acts. (Page 455.)

3. DEDICATION—MANIFEST INTENTION OF LAND OWNER.—Where the owner of certain land laid it out into a town and dedicated certain streets to the public, *held*, he did not dedicate a certain strip of land, marked "Reserve," and over which he continued to exercise ownership.  (Page 455.)

4. APPEAL AND ERROR—JUDGE SITTING AS JURY—FINDING.—Where a cause is tried before a judge sitting as a jury, the judge is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. (Page 456.)

5. APPEAL AND ERROR—FINDING OF FACT BY JUDGE.—The findings of fact by a trial judge sitting as a jury, will not be disturbed where the testimony is conflicting, but his finding is supported by substantial evidence.  (Page 456.)

6. EMINENT DOMAIN—CONDEMNATION—VALUE OF LAND APPROPRIATED.— Where land was taken by condemnation proceedings by a bridge district, the owner of the land is entitled to damages to the amount of the value of the land taken, and in determining this value, its availability for any use to which it is plainly adaptable can be considered.  (Page 457.)

Appeal from Logan Circuit Court, Northern District; *Jeptha H. Evans,* Judge; affirmed.

*Sam R. Chew* and *Hill, Brizzolara & Fitzhugh,* for appellant.

1. The evidence fails to show that Thompson and Drennan or their successors in title owned the land in question at any time, in this, that it fails to show that it was at any time land as distinguished from river bed. The statute relied on by appellees, Kirby's Dig., § 4918, is therefore not applicable.

It appears clear from the testimony that there could have been no land above ordinary high water mark at the point of the reserve in question from 1877 back to the

time the patent was issued by the Government, and such
being the case, any formation coming within the orig-
inal boundaries would not accrue to the owner of the re-
serve because the original north boundary of it was al-
ways under high water mark on the Arkansas River. 53
Ark. 314; 13 Howard 381; 47 Ia. 370.

2. The undisputed evidence shows that the "hog-
back" was formed from the river, and not from the land.
73 Ark. 199; 76 Ark. 529.

3. The map introduced by appellee is strong, if not
conclusive, evidence, that the reserve was dedicated to the
public. Aside from that there is sufficient testimony in
the record to establish the fact of such dedication. 54
Ark. 509; 6 Peters 431; 10 Peters 662; 77 Ark. 221.

*E. L. Matlock, Mehaffy, Reid & Mehaffy,* and *Car-
michael, Brooks, Powers & Rector,* for appellees.

1. The land marked "reserved" on the plat was
never dedicated to public use. It has been under the
direct supervision and control, and in the possession of,
appellees and their predecessors in title since the town
was laid off. They have exercised such acts of ownership
over it as usually accompany the ownership of such
property, and it has never been used by the city for any
purpose except under consent of the owners. A dedica-
tion is never presumed, but must be clearly shown. 54
Ark. 509; 91 Ark. 351; 59 Ark. 26; 63 Ark. 5; 238 Ill. 305;
87 N. E. 320; 23 L. R. A. (N. S.) 809; 74 Pac. 670; 51 N.
W. 1163.

The Lake Village case, *Davies* v. *Epstein,* 77 Ark.
221, relied on by appellant, presents a materially differ-
ent state of facts from the facts in this case. There the
street abutted directly upon the water front, there was
no division line between the street and the shore line,
and no indication that the owner intended to cut off the
public from the water front. But here the boundary line
of the street was clearly indicated upon the plat, and a
comparatively broad strip of land distinctly marked "re-
served" intervened between the street and water front.

The word "reserved" is frequently made use of in

the dedication of tracts of land for public uses, and has universally been held to mean "excepted," "withheld," or "withdrawn." 69 Pac. 237; 7 So. 639; 90 Ala. 109.

The question whether or not the strip of land involved was dedicated to the public use, was one of fact to be determined from the evidence, and the finding of the trial judge on the evidence is as binding as the verdict of a jury. 86 Ark. 504; 82 Ark. 260; 84 Ark. 359; 92 Ark. 41; 90 Ark. 494; *Id.* 512; 88 Ark. 587.

2. The proof is overwhelming, we think, that the land was formed by accretion commencing at the bank and gradually extending out into the river. But this likewise is a question of fact, where the finding of the court will be treated as binding.

3. This court has recognized the doctrine of avulsion. 61 Ark. 420. In this case, if the surface above the rip-rap built by the railway company went off in one overflow and then filled back on top of the rip-rap, it belongs to the original owner. There is nothing in the record to show that the top of the rip-rap was not above ordinary high water mark, but on the contrary, the presumption is that the company built the rip-rap to preserve the bank in the same condition, as nearly as possible, as when the track was laid, and that it was above high water mark. 38 L. R. A. 849; 143 U. S. 359, 36 L. Ed. 186.

4. The amount of the verdict is certainly not excessive; but appellant is in no position to urge this objection, because it did not raise it in the motion for new trial. 55 Ark. 383.

HART, J. Appellant prosecutes this appeal to reverse a judgment against it in favor of appellee in a condemnation proceeding. The facts are as follows:

The predecessors in title of appellees originally owned the land upon which the town of Van Buren is now situated. In 1844, they laid out and platted the land into blocks and streets, and caused a map thereof to be made. The town thereon built was called "Van Buren." The town was laid out on the north bank of the Arkansas

River. Parallel with the river, and running east and west, was a street, designated as "Water Street." Its north and south boundary lines were marked out on the map, and its width was designated to be sixty feet. The meander lines of the river were also marked out on the map, and between the south boundary line of Water Street and the meander lines of the river, extending the whole length of Water Street, was an irregular strip of land which was marked on the map as "Reserve." This irregular piece of ground, as shown on the map, varies in width, being very much wider at the west than at the east end thereof. Main, Jefferson and other streets run in a general direction north and south, and are at right angles to Water Street. A bridge was built across the Arkansas River, and the north end thereof abutted on Jefferson Street. A portion of this piece of ground marked as "Reserve" on the map was appropriated by the bridge district for the purpose of making abutments to the bridge, and the strip of land so taken by it forms the subject matter of this suit. Evidence was adduced by appellees tending to show the following state of facts:

The predecessors in title of appellees reserved the irregular strip of ground in question when the town of Van Buren was platted and laid out for the purpose of using the same as a ferry landing, and for the purpose of preventing other persons from using the same for that purpose. A wharf was built on the reserve at a point where it would lead into Main Street, about two blocks west of Jefferson Street, where the abutments of the bridge are placed. They used this piece of ground from the time the town was first platted and laid out until the bridge was built across the river, as a landing for their ferry boat, and also collected wharfage from such steamboats as landed there. Appellees and their predecessors in title have always claimed the lands to be their own, and have exercised such acts of ownership over it as the necessities of the occasion required. In 1876, the reserve at the point opposite Jefferson Street was about seventy-five feet wide. That is to say, it was about seventy-five

feet from the south boundary line of Water Street at that point to the bank of the river. About that time the railroad company had a track which lay partly on Water Street and partly on the reserve. The track was laid on the reserve by the permission of appellee's predecessors in title. The river bank began to cave, and the railroad company secured permission from the owners of the reserve to rip-rap the bank of the river. When this was done, it caused the river to stop caving and land to be formed thereto by accretion. The process of accretion continued until it formed the land which is the subject of controversy in this action. After the land began to fill in toward the river bank, willow and cottonwood trees grew up thereon. The testimony on the part of appellant tends to show that the land marked "Reserve" opposite Jefferson Street caved into the river, and that steamboats landed at that point while the channel of the river was next to the bank; that subsequently the channel of the river changed toward the south side thereof, and that some distance from the bank of the river a hog-back or island, began to form out in the river; that this high ridge in the river gradually extended toward the bank, but that there is now a well-marked depression between this formation in the river and the bank of the river. In other words, appellant introduced a number of witnesses who testified that the land in controversy did not form as an accretion to the irregular piece of ground marked "Reserve" on the plat, or map of the town, but that it first formed out in the river, and this gradually extended toward the bank.

It is contended by counsel for appellant that the strip of land marked "Reserve" on the original map of the city of Van Buren was dedicated to the public, and they rely on the case of *Davies* v. *Epstein,* 77 Ark. 221, as conclusively supporting their position. We can not agree with counsel in their contention; but, on the contrary, we think that both the language of the opinion and the cases quoted from and referred to in the opinion announce principles of law which, when applied to the facts

in this case, lead to the conclusion that the strip of ground marked "Reserve" was not dedicated to the public. It is not to be doubted that the dedicator, in giving any portion of his lands for use, as public streets, could confine the dedication within such limits as he might choose to fix. The case of *Davies* v. *Epstein, supra,* expressly recognized this right, and the court held that the question of whether or not the owner intended to dedicate the land was one of fact, but that in determining whether or not a land owner intended to make a dedication of his land for public use the intention to which the courts give heed is not an intention hidden in the mind of the land owner, but an intention manifested by his act. In that case the land owner laid out and platted the town of Lake Village, on the bank of a navigable lake. There, as here, a street was laid out parallel with the banks of the lake, and its width marked on the plat, but the material similarity in the facts there end. In that case there was nothing on the plat showing any limits to the width of the street parallel with the banks of the lake except that it was marked "Front Street, fifty feet wide." There were no lines marked on the plat showing the boundary line of the street, and there was nothing to indicate that any ground was reserved between the boundary of the street and the lake. The plat did not even show the meander line of the lake, but the words "Old River Lake" appeared immediately in front of the street on the plat, thereby indicating that the street was to extend to the bank of the lake. In the case at bar the map prepared under the direction of the original land owners is a representation of the town of Van Buren as declared by them, and is a written representation of the location of the town and of its public square, streets and alleys and the width thereof. The map shows that Water Street is parallel to the river, and that it runs east and west. The north and south boundary lines of Water Street are clearly marked and defined on the map, and it is also marked to have a uniform width of sixty feet. Between the south boundary line of Water Street and the river

there is an irregular strip of ground extending the whole length of Water Street between it and the bank of the river. The meander line of the river is also shown on the map. Thus it will be seen that the boundaries of this irregular strip of land are clearly marked and defined on the map, and, in addition to this, it is marked on the map "Reserve." The south line of Water Street, as marked on the map, was plainly intended to mark the south boundary line of that street. The irregular strip of ground between it and the banks of the river, as above indicated, has well defined boundaries marked on the map, and, in addition thereto, it is marked "Reserve," thereby indicating an intent on the part of the dedicator not to dedicate it to the public. When all these facts, as shown by the map itself, are considered, there can be no doubt that the owner intended that the strip of ground marked "Reserve" should be excepted from the dedication, and that it was to be reserved or withheld from public purposes, and that it should be and remain the property of the dedicator. This was the construction placed upon it by the parties in interest. Numerous persons purchased lots with a reference to the plat, and the town authorities, as well as the purchasers of lots, recognized that the strip of ground was the private property of the dedicator. The town was laid out and the map prepared in 1844, and since that time the dedicators and their successors in title have claimed the strip of ground marked "Reserve" on the map and have exercised such acts of ownership over it as the occasion and circumstances seemed to require. Therefore, we hold that under the facts in this case the irregular strip of ground marked "Reserve" was not dedicated to the public, and that the title to it remained in the dedicator.

It is next contended by counsel for appellant that, even if this be so, the strip of ground marked "Reserve" on the map opposite Jefferson Street caved into the river, and that for some time thereafter the main channel of the river was next to that bank; that some time thereafter the channel of the river shifted from the north bank

opposite Jefferson Street to the south side of the river, and that there then formed out in the river some distance from the bank a high piece of ground which they called a "hog-back;" that the land gradually extended from this hog-back toward the north bank of the river and thus formed the land in controversy. Therefore, they contend that the land in controversy began with this bar, or hog-back, which was detached from the shore and by gradually filling in by deposit the land in controversy was formed, and that under the authority of *Nix* v. *Pfeifer,* 73 Ark. 199, appellees had no title thereto.

On the other hand, appellees introduced testimony tending to show that after the railroad company rip-rapped the banks of the river near Jefferson Street, in 1876, the land began to form from the banks of the river outward by process of accretion, and that in this way the land in controversy was formed. The venue was changed from Crawford to Logan County; but the case was tried before the judge sitting as a jury, and he was therefore the sole judge of the credibility of the witnesses and the weight to be given to their testimony. The testimony adduced on both sides on this point was very voluminous, and we have not attempted to set it out in detail, and do not deem it necessary to do so. We have only attempted to give the substance of it and such inferences as we think the circuit judge might have legitimately drawn from it. After carefully reading and considering the testimony on this question adduced by both parties, we are of the opinion that the finding of the circuit judge that the land was formed by accretion from the shore is supported by evidence of a substantial character; and therefore we are not at liberty to disturb the finding of the court.

Finally it is insisted by counsel for appellant that there is no testimony tending to support the finding of the circuit court as to the value of the land taken. They contend that the only value to the land, as shown by the testimony of appellees themselves, was its use as a ferry landing, and that this is not an element of value that can

be considered by the court in awarding damages in a con-
demnation suit. It is true that the testimony on the part
of appellees tended to show that the land in question was
not dedicated to the public, but was reserved in the dedi-
cator on account of its value as a ferry landing. The
court, however, is not concerned with the purpose which
caused the dedicator to reserve the land. He might re-
serve it for ferry purposes as well as for any other pur-
pose. The question to be determined by the court in
awarding damages in this case was the value of the land
taken, and in determining this value, its availability for
any use to which it is plainly adapted can be considered.
In view of our decision in the case of the *Fort Smith &
Van Buren Bridge District* v. *Scott,* 103 Ark. 405, it can
not be said that the finding of the court that appellees
were damaged in the sum of twenty-five hundred dollars
by the land taken has no evidence of a substantial char-
acter to support it. The case to which we have just re-
ferred was a condemnation proceeding between the same
parties. It appears that Scott also owned the land on
the south side of the river where the bridge was built,
and that case was a condemnation proceeding to fix the
damages for the value of the land taken on the south side
of the river.

From the views we have expressed, it follows that
the judgment must be affirmed.