## No. 10,252.

### HORNE *v.* HOPPER.

Decided December 19, 1922.

Action to enjoin the building of a fence on a private way. Judgment for defendant.

### *Affirmed.*

1. REAL PROPERTY—*Possession—Presumption.*   The presumption of law is that possession of real property is in harmony with the rights of the true owner, and before any rights based upon possession or occupancy can extinguish that legal right, it must be shown, among other things, that it was antagonistic.

   An antagonistic or adverse use of a right of way cannot spring from a permissive use.

2. EASEMENT—*Prescription.*   A permissive use of a way over another's land will never ripen into an easement by prescription, no matter for how long a time it may have been enjoyed.

3. *Permission.*   An owner of land is not shorn of any of his rights by merely permitting another to pass over his land, and where there is no inconsistency between such permissive use and the ownership, there can be no prescriptive right.

*Error to the District Court of Weld County, Hon. George H. Bradfield, Judge.*

Mr. HARRY N. HAYNES, for plaintiff in error.

Mr. J. C. EWING, Mr. WORTH ALLEN, for defendant in error.

MR. JUSTICE WHITFORD delivered the opinion of the court.

PLAINTIFF in error was plaintiff in a suit to enjoin defendant in error from building a fence on a private way situated on the west line of the lot of the defendant, which ran north and south connecting the street in front with a public alley in the rear. The plaintiff claims a prescriptive right based on twenty years' use of the drive-way. On the trial the court found for the defendant, dismissed the complaint, and the plaintiff is here on error.

The record discloses that the plaintiff purchased, in October, 1892, the west half of lot 6, block 83, in the city of Greeley; that three months later, in January, 1893, the defendant's husband, William Hopper, purchased the east half of said lot, placing the title in the name of his first wife, and that upon her death the title came to him, which he afterwards conveyed to defendant, in 1914, upon his marriage to her; that the whole lot was then vacant and unoccupied; that the entire lot has a frontage of one hundred feet on Twelfth street, and extends north 190 feet to the public alley; that in 1893 the plaintiff built a dwelling house near the east line on her half lot, and has since resided therein; that the Hoppers, after purchasing an additional 25 feet frontage immediately east of lot 6, built their residence, in 1894 and 1895, and have since occupied all of the lands so purchased by them for residence purposes; that before the Hoppers commenced the construction of their residence, William Hopper offered to sell to plaintiff the west 25 feet of their one-half lot, which the plaintiff refused to purchase; that subsequently the plaintiff offered to buy an interest in the drive way; that during the construction of the two houses the plaintiff and the Hoppers used the space now covered by the drive way for hauling and discharging building material; that both parties have

used the drive way without objection or interruption up to the time of the construction of the fence by the defendant; that the plaintiff used it in connection with her ingress and egress to her property, shed or barn in the rear and to her coal bin; that the city surveyor was employed by the defendant's husband in 1896 to survey and establish the dividing line between the property of the plaintiff and that of the defendant; that the only survey by the plaintiff of her property was made in 1921, immediately prior to the trial of this case below.

In 1911 the plaintiff constructed 50 feet of the sidewalk in front of her property, and at about the same time the Hoppers constructed 75 feet of cement sidewalk, covering the whole frontage of their property, and caused to be corrugated that portion of it in front of the drive way over which vehicles passed in using the street entrance, and paid the cost of construction, without any contribution from the plaintiff; that the stakes set on the dividing line placed by Shattuck, the city engineer, are still in place and show the line established in 1896; that after the construction of the fence the milkmen continued to use the drive way east of the fence for the purpose of delivering milk to the plaintiff.

Witness Davis testified that he assisted in making the survey in 1896, and that the "post of the new fence line recently constructed by defendant is five inches east of the iron pin driven by me in 1896 at the time of the survey."

Mr. Hopper testified that when he went there to build his house there was no well established drive way there, what there is now he made himself, that the real work of fixing it up and getting it in shape was done in 1896, and that all of the driveway is east of the fence now in question.

"Q. Mr. Hopper, state what was done with reference to effecting a driveway there and putting it in? A. I done all the improving of that driveway.

Q. Did you hire anybody to do the work? A. Yes, sir, I did.

Q. What year was that? A. That was in the year 1896.

Q. Who did you hire? A. A man by the name of Lewis Dodge.

Q. Where is he now? A. He is in a place they call Jimtown.

Q. How long did he work on the driveway? A. He worked on it two days and a half.

Q. How much did you pay him? A. I paid him $5.00, I remember that, I paid him $2.50 a day and he worked two days and a half, that was his charge, $5.00.

Q. What did he do in the way of work there? A. He straightened everything out there from the south end to the north end of that driveway, and he worked on it until it was completed.

Q. On whose ground is that driveway and on whose ground has it been maintained up to the present time? A. In the Hopper possession.

Q. The driveway is all on your land? A. Yes, sir.

Q. And the travelled road as it has been travelled is all on which side of the fence? A. It is all on my side of the fence.

Q. Have you during all of the time been using the drive-way in question? A. We have used it right along, it was the only plan of a driveway that I ever laid out.

Q. Did you ever have any intimation that Mrs. Horne was claiming this right of way adversely to you? A. No, sir, it was never intimated to me that she made any claim to that at all."

The plaintiff testified that she used the drive-way from the time she built her house; that she never asked permission to use the drive-way, but that she had spread dirt and gravel on the way on two or three occasions. She said "I just used it and said nothing about it to the owners of the property east, I made no formal claim, verbal or otherwise, to the owner of what is defendant's property." On cross-examination she was asked: "Q. Well, now, if you had that for twenty years, you knew there would not be anything like a fence put in there, didn't you; if you had gotten your right for over 20 years use, you knew nobody

could fence you out, didn't you?   A.   I never had looked
into it, I never knew anything about it at that time, I never
had looked into the matter at all until this came up.  * * *
Q.   You did not have any right to dump dirt on Mr. Hop-
per's ground at that time, did you?   A.   If they had ob-
jected we would not have done it; but they never did object
at all."

We have carefully examined the record in this case, and
are convinced that the finding of the court is supported by
the evidence and should not be disturbed.   The evidence
does not show that the plaintiff claimed a right of user
hostile or antagonistic to the title of the defendant or of
her predecessors.   A twenty years use alone is not suffi-
cient to establish an easement.

We have said:   "The presumption of law is that posses-
sion of property is in consonance, or harmony, with the
rights of the true owner, and before any rights based up-
on possession or occupancy can extinguish that legal title,
it must be shown, among other things, that it was antag-
onistic."   *Evans v. Welch,* 29 Colo. 355, 362, 68 Pac. 778.

There are no circumstances disclosed by the record show-
ing hostility or an adverse claim of right to the use of the
way by the plaintiff, other than the twenty years use,
giving notice to the defendant that the use was antagonis-
tic to her title.

The plaintiff says "I just used it, but said nothing about
it, and made no formal claim, verbal or otherwise, to the
owner of what is now defendant's property."

We think the use of the way must be held to have been
permissive, and not antagonistic to the legal right of the
Hoppers.   An antagonistic or adverse use of a way cannot
spring from a permissive use.

"The permissive use of a way over another's land will
never ripen into an easement by prescription, no matter
for how long a time it may have been enjoyed."   19 C. J.
897.

"An owner of land is not shorn of any of his rights by
merely permitting, as a favor, another to pass over his

land. In order to establish a prescriptive right, something more than mere permissive user must be shown." Goddard, Easm. (Bennett's Ed.) 134.

. "The use of land for the purpose of passing over it is not inconsistent with the right of ownership, and where there is no inconsistency between the use and the ownership, there can be no prescriptive right." *Null v. Williamson,* 166 Ind. 537, 78 N. E. 76.

The Supreme Court of New York says: "The way or track through the servient tenement was used by the owners of the land for their own purposes, and convenience * * * and in such case the use of a way by others does not necessarily import adverse user under a claim of right, and exclusive, within the meaning of the term, but, from the fact that it is kept open and used by the owner for his purposes, it may be inferred that the use by others is by his consent and permission." *Wood v. Reed,* 30 N. Y. Supp. 112, 113.

Mr. Washburn says: "So where one opened a way for his own use to pass from the highway to his land, and another passed over it to go to his land, causing no damage, the presumption, in the absence of evidence, would be that it was a permissive user and not adverse." Wash. Easm. 151 (4th Ed.).

"Where a space is designedly left open by the owner, either for his own convenience or to enable his customers to resort to him, the presumption ordinarily is that a use of such space by an individual, even for his own purposes, is permissive." *Null v. Williamson, supra; Kilburn v. Adams,* 7 Met. (Mass.) 33; *Harkness v. Woodmansee,* 7 Utah, 227, 26 Pac. 291; *Gascho v. Lennert,* 176 Ind. 677, 97 N. E. 7.

The title to the drive-way was in the Hoppers. The use was common. The presumption was in favor of defendant's title. The use by plaintiff was therefore presumptively permissive. The use being permissive, it could not be antagonistic. There being no adverse use, the judgment dismissing the complaint was right.

We find no reversible error in the record, and the judgment is affirmed.

MR. CHIEF JUSTICE SCOTT and MR. JUSTICE DENISON concur.