## No. 10,715.

FORTNER, ET AL. *v.* ELDORADO SPRINGS RESORT CO., ET AL.

Decided July 7, 1924.   Rehearing Denied November 10, 1924.

Action in injunction.   Decree for plaintiffs.

## *Reversed.*

1. MUNICIPAL CORPORATIONS—*Eldorado Springs.* Eldorado Springs is not and never has been a municipal corporation of any class.

2. DEDICATION—*Acceptance.* A dedication to be effective must be accepted by the public authorities within a reasonable time or the right to accept is lost.

3.     *Common-Law or Statutory.* A dedication may be common-law or statutory. Both methods are recognized in Colorado and a dedication if defective under either method may be operative under the other.

4.     *Common-Law.* A common-law dedication may be either express or implied.

5.     *Streets.* Where an owner plats real property into lots and blocks intersected by streets and alleys, and sells lots with reference to the same, he thereby dedicates the streets and alleys to public use unless it appears that intent to dedicate is not present.

6.     *Reservation.* Where an owner plats real property into lots and blocks with intersecting streets and alleys, there is no dedication to public use where streets or alleys are marked "reserved" on the plat.

   The leaving of a blank upon the plat without designation, does not of itself sufficiently indicate an intent to dedicate.

7. EASEMENTS—*Reservations.* A deed giving to grantee of lots the right to pass over reserved streets indicated on a plat of the property, confers no easement rights on streets not included in the reserved streets.

8. HIGHWAYS—*Permissive Use.* Permitting the public to use a private way, held not to have ripened into a recognition of a right of the public to use it as a highway.

9. EASEMENTS—*Prescription.* In order to acquire an easement by prescription, there must appear, inter alia, a use for twenty years.

10. DEDICATION—*Intent of Owner.* It is essential to a dedication that there be on the part of the dedicator a clear intention to part with ownership of his land and vest it in the general public.

11. EASEMENTS—*Gates.* Even though a grant of a private way without reservations is made, the owner of the land on which it runs may, to protect his own rights, erect and maintain a gate thereon.

*Error to the District Court of Boulder County, Hon. Neil F. Graham, Judge.*

Messrs. GOSS, KIMBROUGH & HUTCHINSON, for plaintiffs in error.

Mr. T. E. WATTERS, Mr. PERCY S. MORRIS, for defendants in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE plaintiffs, who are resident freeholders in Eldorado Springs (which they call a town, and which the defendants say is a summer resort), in Boulder county, brought this action to enjoin the defendant resort company and its officers from constructing a fence or gate across, or in any way obstructing, "Canon avenue extended", one of the alleged streets of Eldorado Springs on which the plaintiffs reside, and which they say has been by the resort company and its predecessors in interest set aside, appropriated and dedicated, and which now exists as a private way or road for their use and benefit as abutting lot owners and for all other owners of property in Eldorado Springs. The defendants deny that the plaintiffs ever had or now have any such rights as claimed. The court found for the plaintiffs, and entered a decree that they have a private right of way or easement by dedication to travel over and across the

ground in controversy. It limited its width to the "travelled way", which was narrower than the width of thirty feet claimed by the plaintiffs. Upon such finding the court by its final decree perpetually restrained and enjoined the defendants from constructing a fence across the travelled way which now exists upon the said strip of land in dispute. The decree then proceeds specifically to provide: "Nothing herein contained shall operate or be construed as an adjudication that the public has any easement or right of way over or across said strip of land, * * * or that the defendants have no right to exclude the public from passing over or across said strip of land or charge the public an admission fee or toll charge for doing so, or * * * that the defendants have no right to erect and maintain a gateway or toll gate across the traveled way which now exists upon said strip of land for the purpose of excluding the public therefrom or collecting a charge or fee from the public for passing over the same, so long as the plaintiffs are permitted to pass over and along said travelled way without charge. And the court doth further find and adjudge that in so far as the rights of the plaintiffs are concerned, the defendants have the right to erect and maintain a gateway and gate across said traveled way so long as the plaintiffs are permitted to pass through the same without charge."

To this decree the plaintiffs sued out this writ of error, and their assignments of error are: (1) The decree is erroneous in permitting the defendants to build a gate across the way. (2) In limiting the right of passage to the traveled way instead of the entire way as claimed by them of thirty feet in width. (3) Limiting to the plaintiffs the use of the way which should be extended to the public generally for all purposes for which streets are used.

The defendants have assigned and filed cross-errors. The only one we deem it necessary to consider is that the court erred in finding and decreeing to plaintiffs "a pri-

vate right of way or easement by dedication." They ask for a dismissal of the action.

The plaintiffs in error, plaintiffs below, say that this decree is inconsistent with itself, for if there was a dedication or grant of an easement by the resort company of a private way, the court should not have decreed that the defendants might erect and maintain a gateway across it, so long as the plaintiffs are permitted to pass through without charge. As we think the decree is erroneous and must be set aside in its entirety, we shall not speculate as to the difficulties that might be encountered in the enforcement of the decree, or express any opinion as to the alleged inconsistency between its different parts.

The plaintiffs lay stress upon their claim that Eldorado Springs is a town, and apparently assume, as the authorities generally declare, that there attaches to a recorded plat of urban property some virtue or quality that does not belong to a plat of rural lands. We do not stop to inquire as to such distinction, for it is entirely clear that Eldorado Springs never has been and is not now a town or a municipal corporation of any class, but so far as concerns this case, it is to be considered as rural property. Eldorado Springs lies at the mouth of South Boulder canon in Boulder county. South Boulder creek at this point flows easterly, through a narrow canon which is enclosed on either side by high and precipitous rock cliffs. In 1905 the Moffat Lakes Resort Company, owner of lands in section 25 of the particular township, desiring to establish and maintain a summer resort thereon, subdivided a portion of the easterly part of the section into blocks and lots and filed a plat of the same in the office of the county recorder, thereon designating the resort as Moffat Lakes. In 1907 Mr. Barber and his mother, owners of that part of section 30 lying immediately east of and adjoining the platted property in section 25, subdivided the same as the First Addition to Moffat Lakes, the plat of which was recorded. After these filings were made it was discovered that the surveyor of the Moffat Lakes Company had wrongly as-

sumed that the common section line between sections 25 and 30 ran due north and south, whereas it was not, in the government survey, drawn as a due north and south line but as a line about 0° 32′ east of north. The Barbers so designated the true section line on their plat and their First Addition was made to conform thereto, while the Moffat Lakes plat conformed to the imaginary line running due north and south. Since the Moffat Lakes plat of land on the west extended east only to the assumed imaginary due north and south line, and the Barber plat to the east extended west only to the true section line bearing 32′ east of north, there was left unplatted a narrow strip of land between the two sites which belonged to the Moffat Lakes Company. This Company thereupon made and filed a second plat of the same ground that was included in its original filing, preserving the same general description of lots and blocks, and in addition thereto included this narrow strip of land lying between the true and the imaginary section line, which strip was not subdivided but remained, and was shown by the map to be, unplatted land, and the new plat designated the resort as Eldorado Springs, by which name it has ever since been known. Both proprietors and their successors in interest, in a sense rival resort promoters, from time to time have sold lots in their respective holdings, the instruments of conveyance referring to the respective recorded plats. The defendant resort company and its predecessor have built on their grounds, and have ever since maintained a hotel, swimming pools, dance pavilions, power house and other resort attractions, at an expense of more than $100,000. The parties disagree as to the chief object or purpose of the promoters of Eldorado Springs, the plaintiffs contending that it was to sell town lots, and that the resort feature was but an incident; the defendants, on the other hand, asserting that the principal object was the resort feature, and the selling of lots to private individuals merely an incident.

We are of the opinion, from the record before us, that the chief object of the promoters was to establish and

conduct a summer resort, and that the sale of lots to private individuals was merely an incident, particularly as in that mountain region only during the summer months do the majority of the residents live there. From the first the owners of the resort charged an admission fee to the general public as a condition to their right of entrance. The enterprise, to be successful, depended upon their ability and their right to charge and collect such admission fees. This right, however, could be secured only by reserving to themselves the right of control of the roads and streets of the platted tract. If they were public highways, over which the public generally could travel without restraint or hindrance, it would be impracticable, if not impossible, for the owners of the resort to realize any income or profit by exacting an admission fee to their grounds. If they put beyond their power the control over the avenues of entrance thereto, necessarily, the evidence shows, the business could not succeed; so that we begin this discussion with the observation that it is unlikely that business men, whose plans contemplated the expenditure of large sums of money, would disable themselves from realizing upon their investment by divesting themselves of the power of collecting tolls from the general public for admission to their grounds. We shall see, as the opinion proceeds, that the promoters did take the most effective and publicly announced, method to preserve their important right of control.

The plaintiffs' claim is, as we understand it, three-fold: First, by the filing of their recorded plat the Resort Company dedicated to the public all streets and ways which were thereon delineated; second, that by virtue of a deed of conveyance of the Resort Company to the Barbers, the owners of the First Addition to Eldorado Springs, the right of travel over such highways was expressly given to the Barbers and their grantees of lots therein; and, third, that the right of travel over such streets was acquired by an antagonistic use by them.

1. In 18 C. J. p. 34, et seq., is an instructive article on

dedication. In *City of Denver v. Clements*, 3 Colo. 472; *Mouat Lumber Co. v. Denver*, 21 Colo. 1, 40 Pac. 237; *Town of Manitou v. International Trust Co.*, 30 Colo. 467, 70 Pac. 757, and *Town of Center v. Collier*, 26 Colo. App. 354, 144 Pac. 1123, where many authorities are cited, will be found a full discussion of the subject. Dedication is distinguished from grant or prescription. It is to the public. In this state, to be effective, it must be accepted by the public authorities within a reasonable time, or the right to accept is lost. 18 C. J. p. 72, § 67. A dedication may be a common-law dedication or statutory, and both methods of creation are recognized in this state, and if defective under either method, it may be operative under the other. A common-law dedication may be either express or implied. 18 C. J. p. 54, § 35. In the same volume (p. 58, § 43), it is announced as the general rule, which our decisions above cited approve, that: "Where the owner of real property makes a plat of it and divides the land into lots and blocks, intersected by streets and alleys, and sells any of the lots with reference to such plan, * * * he thereby dedicates the streets and alleys to the use of the public, unless it appears either by express statement in the conveyance or otherwise" an intention to dedicate is not present. As a further illustration of the rule and the exception, the author, at page 63, § 49, says: "There is no dedication to public use where the street or alley is marked 'reserved' in the plat." And at page 65, § 51, it is said: "The mere leaving of a blank upon the plat without any designation of its purpose does not of itself sufficiently indicate an intention to dedicate the premises represented by the blank or undesignated space to public use." To this is cited *Poole v. City of Lake Forest*, 238 Ill. 305, 87 N. E. 320, 23 L. R. A. (N. S.) 809. This is also stated in the cases of *Evans v. Welch*, 29 Colo. 355, 68 Pac. 776, and *Horne v. Hopper*, 72 Colo. 434, 211 Pac. 665. At page 100, § 114, the author again says that there is no dedication of land to the public where the streets on the plat are marked "reserved."

With these principles in mind we turn to both recorded plats of Eldorado Springs and find that neither plat constitutes a dedication to the public of the streets and ways. On the contrary, both of them expressly declare that the corporation which made and filed the plat "does hereby reserve to itself the right to all streets, drives, paths, parks and private ways, as shown hereon." The plat on its face also contains the words, written into the spaces designated as streets, the words "reserved" or "reserved-street-reserved". The latter three words are written into the space occupied by the street in question, across and over which the plaintiffs claim they have a right of unimpeded and unobstructed travel. The recorded plat of Eldorado Springs, which was filed before the plaintiffs acquired any rights as a result of the purchase of lots, on its face shows that this "reserved-street-reserved" in its eastward course stops at the western or imaginary line which the surveyor assumed to be the true boundary line between sections 25 and 30, but which was westerly of the true boundary line as drawn by the Barbers about 38 feet on its north side and 34 feet on the south side, and at the easterly end of this street there was a solid line running north and south extending along its entire width, clearly indicating that the street continued no further east than the assumed, but false, boundary line. Between this assumed line and the true common boundary line of the sections the reserved street did not extend. The stakes upon the ground correspond with the plat. The plat, therefore, on its face disclosed to the public, and the buyers of lots in the platted ground were charged with notice of all facts that the plat afforded, that the street did not extend beyond the assumed boundary line and that it covered no part of the space between the imaginary and the true boundary line, which is the ground in controversy. In other words, the plat itself on its face shows that the strip in dispute, which lies between these the two nearly parallel, but slightly diverging, lines running north and south, the one the true, the other the false, boundary line between the two sections, was no por-

tion of a street but was a part of unplatted ground belonging to the resort company. The toll gate or fence, which the defendant resort company has placed on the unplatted ground between the two lines, it had a right to place there, because it was its own private property and not upon any part of a street or road of Eldorado Springs. There was, therefore, no dedication to the public, or for the benefit of abutting lot owners, by the makers of this plat of any part of the strip of land in dispute between these parties, and the evidence fails to show that they otherwise acquired such rights.

2. The second claim of the plaintiffs is that the resort company and the Barbers entered into an agreement, which was later merged into a deed of conveyance from the company to Barbers by which it gave to Barbers and to all their grantees of lots in the Barber addition, of which plaintiffs are numbered, the right to pass over the "reserved streets" of Eldorado Springs, which they say include the ground here in controversy. This deed upon its face, which is the measure of the rights of the parties so far as concerns this second claim, shows that the grant to Barbers and their grantees, was a right "to pass over all the reserved streets which are shown on the plat of Eldorado Springs." In the foregoing discussion it has, we think, been established that the strip in dispute was not a part of, or included in, a "reserved street" of Eldorado Springs.

3. The third ground upon which the rights of plaintiffs are predicated is, that before this resort was established or created there was a public highway that included the disputed strip, and that ever since the recording of the defendants' plats plaintiffs and the public generally made use of the strip as a part of a public highway, travel over which is permitted not only to resident freeholders of Eldorado Springs but to the public generally. We have examined the evidence in this record with care and we do not think that this claim is to any degree sustained by the evidence. There was, it seems, before Eldorado Springs was

in existence, a way substantially on the line of this so-called reserved street of Eldorado Springs, but it was a private way of the owner of the land across which it ran. The land owner fenced this land and had gates across the way. In the summer time it was seeded to alfalfa and other crops. The county never accepted or recognized it as a highway, or expended any money in improving or caring for the same. Such right as these plaintiffs have acquired in the reserved streets of Eldorado Springs is at most only a permissive use by the defendant resort company. The defendant resort company made use of this street or highway for its own purposes. It permitted the public to use it as a part of its own property in reaching the resort and in the conduct of its own business, but it was only a permissive use and never has ripened into a recognition of the right of the public to use it as a highway.

Speaking generally as applicable to all the contentions of the plaintiffs, we say that this record discloses that soon after the platting of this ground by the resort company and by the Barbers, there was a common understanding between them that the Barbers would, by means of gates and fences, prevent the general public, who came from the east, from traveling over their grounds in order to reach the defendants' resort. A toll gate at first was placed southeasterly of the present toll gate which the defendants have erected upon the strip of land in controversy. So long as the Barbers observed the understanding between them and the resort company, by excluding the general public from their grounds, this toll gate, as originally built, was a sufficient protection for the resort company and it was able to charge and receive toll from the general public who desired admission to the resort. Because of some difficulty or controversy between the Barbers and the resort company, the plaintiffs say the defendants abandoned their original toll gate and later erected this one at a place through which, in the absence of a toll gate, the general public could, without paying an admission fee, secure an entrance to these grounds after they had been permitted by

the Barbers to travel across their land to the east of the newly erected toll gate. It is immaterial whether the controversy between the Barbers and the resort company was or was not the occasion for the erection of the new toll gate. If defendants had the right to erect it, and if they did erect it, upon their own ground and not upon some "reserved street" of Eldorado Springs, the right to the use of which unobstructed the plaintiffs had acquired, it is immaterial what led them to do so. We observe, however, in this connection, that the plaintiffs in their complaint specifically allege, not that the strip of land in dispute is a public highway, but that it is a private way, the right to travel over which they have acquired by either or all of the three ways which we have already discussed.

We are impressed by this record, that the real object which the plaintiffs have in view is not so much, or at all, to secure a decree giving them a right to travel over the disputed ground, which the defendants have never denied them, as it is to assist the Barbers in their controversy with the defendants, whatever that controversy may be, which is not clearly, if at all, disclosed in this record. In other words, the effort of the plaintiffs, at least after they began the suit, was to enlarge the scope of their individual complaints. They only claimed in their pleadings the right of resident freeholders to an unobstructed travel over the reserved streets of Eldorado Springs as private ways, and because they were owners of abutting lots in the platted tract of ground. But in their prayer for relief, and in their arguments here, they ask for a decree declaring these reserved streets to be public highways, accessible to the general public. Such relief to the general public would be outside of the issues. No such question is involved in this case. The plaintiffs either have or have not a right, acquired by one or more of the three designated methods, to travel over this disputed strip of land. The evidence shows that they have no such right, and the decree of the court awarding that right is wrong. They have not acquired an easement or a right to travel over this road as the result

of a dedication.   It was not secured as the result of a grant by the resort company to the Barbers.   It is not a right acquired by antagonistic or adverse use.   No claim has been made by the plaintiffs of a prescriptive right, but if there was any such claim the evidence fails wholly to establish it, since there has been no use for a period of twenty years, which, inter alia, must be shown.   *Smith v. Griffin,* 14 Colo. 429-431, 23 Pac. 905.   That a dedication, express or implied, or a right by adverse use, has not been made is clearly shown by several of our own decisions. *Evans v. Welch, supra; Mitchell v. City of Denver,* 33 Colo. 37, 78 Pac. 686; *Starr v. People,* 17 Colo. 458, 460, 30 Pac. 64; *Chicago, R. I. & Pac. Ry. Co. v. Hayes,* 49 Colo. 333-341, 113 Pac. 315; *Horne v. Hopper, supra.*   See also 18 C. J. pp. 52, 53, which cites a number of cases to the effect that it is essential to a dedication that there was, on the part of the dedicator, a clear intention to part with ownership of his land and vest it in the general public.

Neither in the pleadings nor in the evidence is there the slightest charge or showing that plaintiffs as resident freeholders are or ever have been denied the right to travel over the reserved streets of Eldorado Springs in going to and from their homes, subject only to the erection of a toll gate to protect the defendants as against the general public, and this right the plaintiffs have without any charge whatever.   The defendants concede that these plaintiffs and the dependent members of their family may freely exercise this right of passage which they have enjoyed for many years.   If there was presented in this case or was litigated a controverted issue as to such right, a decree preserving it to the plaintiffs might be made, but as there is no such controversy here we would be going outside the record if we directed a decree to save a right that is not in issue or denied.   Besides, no substantial, if any, injury is done to the plaintiffs by our conclusion.   They have free access to their homes and egress therefrom by another way or street, practically as convenient and as short as over the way they contend for here, and it is unobstructed by a toll

gate. The proof also is clear that the spot where this toll gate complained of has been erected is the only practicable one that will protect the defendants and enable them to collect toll from the general public. That portion of the decree, had it been within the issues, declaring that the defendants as against the plaintiffs have the right to erect at this place a toll gate and to maintain it, so long as the plaintiffs and the dependent members of their family may pass over the same without charge, might have been upheld by this court; but in view of the position of the parties here it is not necessary, for the protection of the defendants, that any such decree should be made, even if it were within the issues, for the rights of the plaintiffs in that respect have never been denied, and there is no evidence that they will be denied, by the defendants.

Even if the plaintiffs have the right of ingress and egress over the reserved streets of Eldorado Springs as private ways, including this disputed strip, and certainly if they have no such rights, it is permissible for the defendants, in order to protect and safeguard their own business, to erect the toll gate where they did. In 19 C. J. pp. 986-987, it is stated as a general rule, that even though a grant of a private way without any reservations is made, the owner of the land on which it runs may, to protect his own rights, erect and maintain a gate thereon, if it does not unreasonably interfere with the right of passage, where such gate is necessary for the protection and efficient use of the lands constituting the servient estate. An expression often quoted gives the reasons for the rule: "The great preponderance of convenience to the land owner over the slight inconvenience to the way owner, seems to make it reasonable in the eye of the law that such should be the rule." The rule is strikingly applicable to this case, particularly in view of the reservations in the plat and the language endorsed thereon as above quoted. The inconvenience to the plaintiffs in opening and closing a gate, or stopping in their passage over this way for the gatekeeper to open or close it for them, is slight indeed compared to

the great inconvenience and disastrous financial loss that would be sustained by the resort company, which would necessitate the abandoning of the enterprise and the loss of its investment, if it could not erect the gate at this place and there collect toll or an admission fee from the general public. *Garland v. Furber,* 47 N. H. 301; *Phillips v. Dressler,* 122 Ind. 414, 24 N. E. 226, 17 Am. St. Rep. 375; *Amondson v. Severson,* 37 Iowa, 602; *Hartman v. Fick,* 167 Pa. 18, 31 Atl. 342, 46 Am. St. Rep. 658, and note; Washburn on Easements (4th Ed.) pp. 255, 256, 291, 292; Jones on Easements, §§ 400, 401, 405, 406; *Green v. Goff,* 44 Ill. App. 589, affirmed in 153 Ill. 534, 39 N. E. 975.

In view of the foregoing the decree must be, and it is, reversed, and the cause remanded, with directions to the district court to vacate the same and to enter a judgment or decree dismissing the action, the costs of the trial below and upon this review to be taxed to the plaintiffs.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR concur.