ARK. STATE HIGHWAY COMM. *v.* O. & B., INC.

5-1240                                          301 S. W. 2d 5

Opinion delivered April 22, 1957.

*W. R. Thrasher* and *Dowell Anders,* for appellant.

*Catlett & Henderson,* for appellee.

MINOR W. MILLWEE, Associate Justice. This is an action by appellant, Arkansas State Highway Commission, condemning certain lands in Pulaski County for the relocation and reconstruction of U. S. Highway 67 between North Little Rock and Jacksonville, Arkansas. The suit involved numerous tracts but the instant appeal concerns only two parcels containing 12.98 acres belonging to the appellees, O. & B., Inc., and H. & B., Inc.

Barney Elias, Raymond Rebsamen and Edward Elias were partners doing business as Statewide Homebuilding Company in April, 1954, when they purchased from Dr. Ewing Nixon, Ruth Nixon and Ruth Wilson about 30 acres known as Oakview Subdivision to the City of Jacksonville, Arkansas, and 66.03 acres known as Edgewood Subdivision to said city. Included in Oakview Subdivision was a 4.16-acre strip 200 feet wide known as ''Plot A'' and in Edgewood an 8.82-acre strip similarly designated as ''Plot A'', which are the lands involved here.

The replat of Oakview Subdivision filed in the circuit clerk's office by the Nixons and Ruth Wilson on May 31, 1954, specifies that Plot A shown thereon is ''Reserved by Owner for Sale to Arkansas Highway Department.'' The plat of Edgewood Subdivision filed by the same owners on October 5, 1954, states that Plot A shown thereon is ''Reserved for Highway Use.'' The plats dedicate ''all streets, alleys, walks, parks and other open spaces to public use as noted'' thereon. Bills of as-

surance also filed by the owners provide for dedication to the public of the "streets and easements" as set out on the plats.

Shortly after appellant filed the instant suit on December 27, 1955, Statewide Homebuilding Company conveyed Plot A, Oakview Subdivision, to appellee, O. & B., Inc., and Plot A, Edgewood Subdivision, to appellee, H. & B., Inc. Appellees are Arkansas corporations owned in equal interests by the partners of Statewide Homebuilding Company. Appellant deposited $8,650 as estimated just compensation for the two tracts in a declaration of taking filed January 16, 1956. In its answer O. & B., Inc., asserted it had been damaged in the sum of $38,500 by the taking of the 4.16-acre tract while H. & B. Inc., sought damages of $63,000 for its 8.82 acres.

At the trial four expert witnesses for appellees fixed the market value of the 4.16-acre tract at the time of taking at amounts varying from $19,600 to $23,040 and the 8.82-acre tract at amounts from $39,200 to $66,714. Two witnesses for appellant placed a market value of $750 per acre on all the lands for a total value of $10,000. All the witnesses agreed that if the property had not been taken by appellant the highest and best use to which it could be put was for residential lot development and some witnesses stated that was the only use to which the property could logically be put. All the lots in Oakview Subdivision except Plot A had been sold at the time of trial but none of the lots in Edgewood had been sold at that time. The population of Jacksonville had more than doubled and property values in the vicinity had increased 200 per cent, or more, since 1953 on account of the construction there of the Little Rock Air Force Base. The number of residential subdivisions increased from seven to sixteen in the same period. The jury returned a verdict in favor of O. & B., Inc., in the sum of $12,480 and in favor of H. & B., Inc., for $26,460. The instant appeal is from the judgment based on this verdict.

The principal contention for reversal is that the two parcels in question were dedicated to the public for high-

way purposes and appellees were, therefore, entitled to recover nothing on account of the taking. Appellant says this is clearly shown by the plats and bills of assurance filed by the owners and that the court erred in refusing its request for a peremptory instruction to the jury to that effect. Reliance is had on *Mebane* v. *City of Wynne,* 127 Ark. 364, 192 S. W. 221, and many similar cases holding that where owners of land lay out a town, or an addition to a city or town, platting it into lots and blocks, intersected by streets and alleys, and sell lots by reference to the plat, they thereby dedicate to the public use the streets, alleys and other public places marked on the plat, and such dedication is irrevocable.

Appellant also cites the following statement of the textwriter in 16 Am. Jur., Dedication, Sec. 24: ''Even such an indefinite expression as 'the place' or the word 'reserved', may operate, in the light of the circumstances under which it is used to show a dedicatory intention, while open or vacant spaces may be held devoted to public use where from their position on, and relation to, the plat, or from symbols used, such appears to have been the intention of the owner, although they are not named. Where reservations for specified public purposes have been made with no apparent intention on the part of the dedicator of reserving title in himself, but with the sole object of benefiting the public, such a reservation has been given effect and, of course, has been held to constitute a dedication. It has been held, however, that where a designated space on a map or plat is marked 'Reserve' or 'Reserved' although there is an absence of statement of the purpose of the reservation, there is no intention to grant to the public and no dedication takes place.''

The question whether the terms ''Reserved by Owner for Sale to Arkansas Highway Department'' and ''Reserved for Highway Use'' used on the plats filed in the case at bar constituted a dedication to the public use was decided adversely to appellant's contention in *Ft. Smith & V. B. Bridge Dist.* v. *Scott,* 111 Ark. 449, 163 S. W. 1137. In that case appellee's predecessor in title platted land which became a part of the town of Van Buren

with Water Street running parallel with the Arkansas River on its North bank. An irregular strip lying between the south boundary of Water Street and the river was marked "Reserve" on the plat and map. A portion of this strip was condemned by the bridge district for construction of abutments and had been used by appellee and his predecessors as a ferry boat landing. In rejecting the district's contention that the strip was dedicated to the public the court said: "The irregular strip of ground between it (Water Street) and the banks of the river, as above indicated, has well defined boundaries marked on the map, and, in addition thereto, it is marked 'Reserve', thereby indicating an intent on the part of the dedicator not to dedicate it to the public. When all these facts, as shown by the map itself, are considered, there can be no doubt that the owner intended that the strip of ground marked 'Reserve' should be excepted from the dedication, and that it was to be reserved or withheld from public purposes, and that it should be and remain the property of the dedicator." Other cases to the same effect which also involve use of similar words on city or subdivision plats are: *Morris* v. *Avondale Heights Co.,* 218 Ky. 356, 291 S. W. 752; *Fortner* v. *Eldorado Springs Resort Co.,* 76 Colo. 106, 230 Pac. 386; *Harris* v. *City of St. Helens,* 72 Ore. 377, 143 Pac. 941.

We have also frequently said that the question whether an owner intended to dedicate his land for public use is one of fact to be determined by the jury where such intention is not expressed in writing without ambiguity. *Ayers* v. *State,* 59 Ark. 26, 26 S. W. 19; *Davies* v. *Epstein,* 77 Ark. 221, 92 S. W. 19. The question was submitted to the jury by the trial court here under an instruction requested by appellant. The terms used by the owners plus other facts and circumstances bearing on their intention are ample to sustain the jury's finding that there was no intention to dedicate the property to the public. Dedication is ordinarily considered as just the opposite of reservation and it would appear somewhat anomalous for one desiring to donate his land to public use to reserve it "for sale" to the public agency involved.

Appellant also contends that, even if there was no dedication, the land was without market value because its use was restricted for highway purposes under the rule usually applied with respect to such properties as schools and churches that are used for service and not for profit. This point was also resolved against appellant's contention in *Ft. Smith & V. B. Bridge Dist.* v. *Scott, supra,* where the court said: "Finally it is insisted by counsel for appellant that there is no testimony tending to support the finding of the circuit court as to the value of the land taken. They contend that the only value to the land, as shown by the testimony of appellees themselves, was its use as a ferry landing, and that this is not an element of value that can be considered by the court in awarding damages in a condemnation suit. It is true that the testimony on the part of appellees tended to show that the land in question was not dedicated to the public, but was reserved in the dedicator on account of its value as a ferry landing. The court, however, is not concerned with the purpose which caused the dedicator to reserve the land. He might reserve it for ferry purposes as well as for any other purpose. The question to be determined by the court in awarding damages in this case was the value of the land taken, and in determining this value, its availability for any use to which it is plainly adapted can be considered." The lands here were "reserved for" and not "restricted to" highway usage by the owners and appellees could have used the plots for building sites or any other lawful purpose if appellant had not located the highway across the land.

Nor do we agree with the further contention that the court erred in admitting testimony relative to the division of the two plots into residential lots and its net value for such purposes after deduction of improvement costs. The established rule in this state in cases like this is that the owner may be allowed to show every advantage that his property possesses, present and prospective, in order that the jury may satisfactorily determine what price it could be sold for upon the market. *Little Rock Junction R. Co.* v. *Woodruff,* 49 Ark. 381, 5 S. W. 792,

4 Am. St. Rep. 51; *Kansas City Southern R. Co.* v. *Boles,* 88 Ark. 533, 115 S. W. 375.

Appellant concedes that potential use of land for subdivision purposes may be considered in establishing market value but says it is error to show the number and value of lots into which a certain tract may be divided. Cases from other jurisdictions supporting this argument involve facts quite different from those in issue here. This is not a case where use for subdivision purposes is merely speculative and too remote to influence present market value. As previously indicated, it is undisputed that the land of appellees was adjacent to and surrounded by well developed residential sections of the fast growing City of Jacksonville and that its best and most logical use was for residential lot development. In these circumstances we have held the testimony objected to by appellant to be admissible to establish market value.

In *St. Louis I. M. & S. Ry. Co.* v. *Theo Maxfield Co.,* 94 Ark. 135, 126 S. W. 83, the court said: "The chief question involved in this case is whether or not, in determining the value of the land, the fact can be taken into consideration that the land is suitable for division into lots and blocks and an addition to the adjacent city; and whether or not the witnesses can take into consideration the value of such lots and blocks in arriving at their opinion as to the market value of the land. It is contended by the appellant that the land, although thus laid out on the plat in lots and blocks, was actually enclosed and cultivated as a farm; and while one or two streets had been opened up along the sides of the tract, the streets were not actually opened up through the tract, and the lots were not actually at the institution of the suit indicated on the land; and it urges that the value of the lots as laid out on the plat should not be considered in arriving at the value of the tract of land. But the measure of the damages which the owner is entitled to recover for property taken for public use or depreciated by such use is the market value of it. This market value is determined, not solely by the uses to which the property has been put or is put at the time of the condemnation proceeding, but by all the purposes to which it is

adapted''. After noting that the land was situated similarly to that involved here, the court further said: ''In the case at bar we are of opinion that the witnesses, in estimating the market value of the tract of land that was appropriated for the right-of-way, could take into consideration its value for the purposes of town lots, and that they and the jury could fix the value thereof upon that basis of the market value of such lots.'' See also, 29 C. J. S., Eminent Domain, Sec. 160.

On the question of adaptability of the land for building lots the trial court told the jury: ''Now from the testimony, you have heard that the maximum value of the other similarly situated lands for any reasonable use is for subdivision purposes. And in that connection let me caution you that it is the value of the entire tract that you must determine and not the lots into which it might be divided. You are not to determine how it could best be divided into building lots, nor conjecture how fast they could be sold nor at what price per lot. You should not inquire what a speculator might be able to realize out of resale in the future, but you should consider what a purchaser would have been willing to pay for it on January 16, 1956, in the condition it was then in.'' The jury evidently followed this admonition in fixing the market value and there is no contention that the verdict is excessive. Since the instruction was perhaps more favorable to the appellant than the facts warranted, it is hardly in position to now argue that same was inconsistent with the evidence, or that appellant was in any manner prejudiced by the giving of the instruction.

The testimony of appellees' agent as to his intention in respect to the alleged dedication of the two plots in question was admissible under the general rule that such evidence may be considered in connection with all the other facts and circumstances for the purpose of throwing light on the acts of the dedicator, where such acts do not manifestly indicate the intent to dedicate. See 26 C. J. S., Dedication, Sec. 46 (c).

We find no prejudicial error, and the judgment is affirmed.