BUSHMIAER *v.* CITY OF LITTLE ROCK.

5-2076                    333 S. W. 2d 236

Opinion delivered March 21, 1960.

*Griffin Smith,* for appellant.

*Joseph C. Kemp* and *William M. Stocks,* for appellee.

CARLETON HARRIS, Chief Justice.   This is an appeal from a decree of the Pulaski County Chancery Court,

which found that "a thirty (30) foot strip of land was dedicated to the public for a right-of-way for West Markham Street along the south side of Midland Hills Addition at the time of filing of record the plats for said addition; and that the proposed widening of West Markham south of Midland Hills Addition * * * will be entirely within the dedicated right-of-way * * *." Petition for injunction against the city of Little Rock was denied.

Appellants are property owners in the addition adjoining the north side of the street between the intersection of Kavanaugh and West Markham to the east, and just beyond Crystal Avenue to the west. They alleged that no dedication for public use exists north of the present curb line, and a widening of the right-of-way would constitute a taking of private property for public use without just compensation. They further alleged that unless the construction was enjoined, irreparable damage would result, and that they had no adequate remedy at law. Answering, the City asserted that it owned all of the right-of-way which it proposed to utilize; also, that the appellants had an adequate remedy at law for damages. For reversal, appellants argue three points, as follows:

"I.

Dedication of property for use as a public street must be accomplished in such manner that the record of the dedication puts abutting landowners on notice of the boundaries. The intent must be manifested in such fashion that a competent surveyor can establish the boundaries with absolute certainty. A survey which carries on its face notice of its own inaccuracy cannot, after lapse of half a century, during which improvements have been made by abutting landowners, sufficiently meet these standards.

II.

Ark. Stats. Sec. 19-3802 require acceptance of a dedication by passage of an ordinance specifically designed for such purpose. No such ordinance accepted the dedication claimed here, hence it is incomplete.

### III.

By requiring improvements by abutting landowners, which could only be done if the property was private, the city is now estopped to claim it is public."

We proceed to a discussion of each point in the order named.

### I.

From evidence presented at the trial, it appears that the Midland Hills addition was platted in two parts within an approximate two months period. The eastern section, platted in August, 1910, contains a dedication along the southern boundary for Markham Street (designated as such on the plat), with the figure "30" indicating the width of the street right-of-way. The following statement appears on the face of the plat:

"Because of the many curves and angles and irregular boundaries on this Plat the exact dimensions of lots or subdivisions may not be accurately designated on this plat, therefore, dimensions shown hereon are subject to variations and errors and in such cases, the monuments and iron pins as originally placed by Theo. Hartman C. E. shall govern."

The western section, platted on October 9, 1910, contains a dedication along the southern boundary for Markham Street in the same scale (which is indicated to be 1″=100′ on both plats), but without any written figure indicating the width of the right-of-way. These plats were recorded in Plat Book No. 1 on pages 132 and 150 respectively. The evidence reflects a conflict between the plats of the addition and the original government survey, and many of the figures on the plats, given by the original surveyor of the addition, cannot be verified. This evidence was primarily directed to the lengths of the eastern and southern boundaries of the addition, and not to specific lots along the northern side of Markham Street. Mr. Chris Wright, a civil engineer, testified that, in his opinion, there was "such utter confusion in the pins, you cannot accept them"; however, he admitted that he could not give any figures for overage or shortage in

the lots along the street. Jan Carter, Director of Public Works for Little Rock, conceded that some of the figures given by the original surveyor of Midland Hills could not be verified. The city, to substantiate its contention that the width of the dedicated right-of-way was thirty feet, relied upon the testimony of Mr. Carter and John P. Powers, a registered professional engineer. Carter stated that the scale on the two plats was the same, and that he concluded that the right-of-way on the plat of the western division was a continuation of the thirty foot right-of-way on the eastern part, since both "scaled out" approximately the same. He further testified that the proposed widening will vary from 3½ feet to 4 or 4½ feet back of the present curb, and that at no place will the street and sidewalks encroach upon the property beyond the alleged thirty foot right-of-way.[1]

Mr. Powers testified that according to his computations and figures, the minimum right-of-way through the addition is twenty-nine and one-half feet, this determination being based upon measurements he made from the streets in the addition north of Markham Street along the property lines south to the right-of-way line as claimed by the city. The witness further stated that along the east side of Midland (the first street intersecting Markham in the disputed area) the measured distance to the right-of-way is one-half foot "shy" of the platted distance on the original plat (this is the point which establishes the minimum width of the right-of-way at twenty-nine and one-half feet); that on the west side of Midland there is an overage of 2.4 feet; that along the east side of Ridgeway Avenue (the second street) there is an overage of .45 feet; that along the east side of Crystal Avenue there is an overage of 2.35 feet, and that along the western boundary of the addition, he found an overage of 2.35 feet over the equivalent of eight fifty foot lots. Based upon these measurements, he concluded that the city had a thirty foot right-of-way through the

---

[1] According to Mr. Carter, the overall width of the right-of-way is sixty feet, but we are here only concerned with the north half of such right-of-way (that portion dedicated by Midland Hills Company). The street has been enlarged from thirty to forty-five feet, and seven and one-half feet is left on each side for sidewalks and utilities.

addition. From his testimony, it is also apparent that pins were found near the alleged right-of-way line in each instance, although in many instances more than one was found at a particular location.

Appellants contend that the surveys made in the area are so patently erroneous that the boundaries of the dedication cannot be established beyond the existing curb line, and that the property owners cannot be charged with notice of a dedication of the alleged width.

We think the evidence supports the finding of the Chancellor that the dedicator intended to dedicate a right-of-way thirty feet in width. Relative to the statement appearing on the face of the plat, original pins or monuments were not determinable, and it was therefore not possible to establish exact dimensions, but appellants offered no proof to show that the findings of the city engineers were incorrect. Further, we note that appellants introduced no evidence showing that as a result of the widening, their lots are made smaller, *i.e.*, that they have less footage, than entitled to under the plat. Appellants only rely upon testimony that the general dimensions of the entire addition are not susceptible to confirmation by survey, and that the dedication, if any, beyond the existing curb line is void. This same contention was made in the case of *Paragould* v. *Lawson,* 88 Ark. 478, 115 S. W. 379 (1908), and was rejected by this Court, which stated:

"The principal contention of appellees in support of the decree in their favor is that the dedication was void for the reason that the plat of the addition did not sufficiently locate and identify the land, but we think this contention is not well founded. The surveyor's certificate or note indorsed on the plat shows that the land platted lies within a certain quarter section, and the center of the quarter section is approximately indicated on the plat. Cumberland Street was one of the established streets running through the city, and the designation of the street on the plat by that name and of the same width is sufficient to identify it as a continuation of that street. We are only concerned in this case about the

identification of the street; but when it thus identified as a continuation of the street of that name in the city, the uncertainty as to the location of other property on the plat disappears.

It is not essential that the description be so precise that the location and identity of the land embraced are apparent from the description alone, but extraneous circumstances may be considered to show the application of the description. *Dorr* v. *School District,* 40 Ark. 237; *Tippins* v. *Phillips,* 123 Ga. 415. According to this rule, it was competent, by parol testimony of extraneous circumstances, to fit the plat to the adjoining parts of the city, so that Cumberland Street would be what it was obviously intended, a continuation of the street of that name and width in the old part of the city."

Here, the location of Markham Street is not in dispute, and the city has shown that the width of the street according to the scale of the plat of the western part of the addition, is the same as the width of the street in the plat of the eastern portion where street width is indicated. It might also be pointed out that the plat of the western portion shows the boundaries of Block 13 (half of Block 13 being shown on plat 132), and portrays an extension of Markham Street east, which ties in with plat 132, or the eastern portion. This extension appears to be of the same width as the rest of the street shown on the plat. These facts in themselves denote an intention by the dedicator to dedicate a continuous thirty foot right-of-way along the entire southern boundary, and constitute notice to a person contemplating purchase of land within the addition.

As previously stated, appellants offer no proof that they have record title to the disputed area. Without a showing of actual title of record, or by the monuments referred to on the plats, appellants can only rely upon adverse possession, or laches, neither of which is applicable in this case. As to adverse possession, the pertinent portion of Ark. Stats. Anno. (1947), § 19-3831, provides as follows:

"Hereafter no title or right of possession to any alley, street, or public park, or any portion thereof, in any city or incorporated town in this State shall or can be acquired by adverse possession or adverse occupancy thereof, and the right of the public or of any city or incorporated town . . . to open or have opened any alley, street or public part, or parts thereof, shall not be defeated in any. action or proceeding by reason or because of adverse possession or adverse occupancy of any such alley, street or public park or any portion thereof where such adverse possession or occupancy commenced or begun after the passage of this act, * . * *."

There is no question of abandonment, for it is undisputed that the public has used a part of the alleged right-of-way from the beginning, and has continued to so use it.

Nor can appellants prevail upon the theory of laches or estoppel, for in *Paragould* v. *Lawson, supra,* this Court stated:

"The equitable doctrine of laches can not be successfully invoked to defeat the right of the city to open the street which was dedicated to that use. The city is not asking any equitable relief, and appellees are therefore not in position to take advantage of a doctrine which is sometimes afforded by courts of equity purely as a matter of defense where the party guilty of laches is asking the court for relief. In such case the court simply remains passive and refuses to grant the relief. *Chatfield* v. *Iowa & Ark. Land Co., ante* p. 395.

Nor is the city estopped, on account of the inaction of its officers for a long period of time, to proceed to open the street. The city had no power to vacate the street (*Texarkana* v. *Leach,* 66 Ark. 40), and could not do indirectly through mere inaction on the part of its officers that which it was without power to do directly. *Beebe* v. *Little Rock,* 68 Ark. 39. The owners of lots abutting on the platted street had notice of the dedication, and are presumed to have had knowledge of the city's right to proceed in its own time to open the street. *Brewer* v. *City of Pine Bluff, supra.* They could there-

fore, build up no right to continued occupancy of the dedicated strip on account of delay in opening the street to public use.''

## II.

Relative to this point, appellants rely upon § 19-3802, which provides that streets and alleys, dedicated to public use, shall be accepted by the city through ordinance. The record does not reflect that the dedication, here in question, has been accepted by city ordinance. The same argument was made in *Brewer* v. *City of Pine Bluff,* 80 Ark. 489, 97 S. W. 1034 (1906). As previously pointed out, this land was platted, the streets dedicated, lots sold by reference to the plats, and the public has used the street for many years. In the *Brewer* case, it was shown that the dedication was never accepted by city ordinance, but this Court said:

''But the question is not important in this case, for, as before stated, the dedication of it as a public way has now become irrevocable, and the city can accept it at any time. Meanwhile the public has the right to use it, and the plaintiff has no right to obstruct it.''

## III.

According to the testimony of Mrs. George Smith, one of the appellants, she received a letter from some city official directing her to put up a retaining wall on a portion of the property that the city now claims is in the right-of-way, under the penalty of having the city do it for her, and sending her the bill.[2] She was unable to identify the sender of the letter. Mrs. Smith built the wall and paid for it in 1945. Appellants assert that by this positive act, the city recognized the property as private property; that it cannot, on the one hand, require property owners to make improvements on the theory that the property was private, compelling the owner to pay for such improvements,[3] and then later insist that the

---

[2] Mrs. Smith first stated that she received the letter from the Chamber of Commerce, but subsequently testified that the letter came from the city.

[3] Ark. Stats., §19-3806, 3807.

property is not private, but in a right-of-way; in other words, the city is estopped from disputing Mrs. Smith's ownership. While the testimony on this point was somewhat vague, since Mrs. Smith did not recall who ordered her to build the wall, and appellants have presented no source of authority for such action by the city, a similar contention was held to be without merit in the case of *Hankins* v. *City of Pine Bluff*, 217 Ark. 226, 229 S. W. 2d 231 (1950). There, this Court said:

"Hankins also contends that the city is estopped to question the location of the curbing, for the reason that the city engineer approved it. The city, however, brought suit soon after construction was begun, and in any event the city engineer's erroneous approval could not create an estoppel. It is not suggested that this officer is authorized to give away part of the public thoroughfare, and we have often held that a public officer cannot bind the State or its subdivisions beyond the extent of his actual authority. 'All who deal with a public agent must at their peril inquire into his real power to bind his principal.' "

On the whole case, we are unable to say that the Chancellor's findings were against the preponderance of the evidence.

Affirmed.

Justice McFADDIN not participating.

JOHNSON, J., dissents.

JIM JOHNSON, Associate Justice, dissenting. I understand the law relative to the validity of dedication to be as follows:

"To constitute a good common law dedication, a definite and certain description of that which is proposed to be dedicated is necessary. The instrument relied on as dedicating property should show on its face at least enough to enable a competent surveyor to find with absolute certainty that which is assumed to be conveyed. However, an insufficient description may be cured by reference to

a map accurately fixing the location.'' 26 C.J.S. Dedication Section 14.

One of the plats here in question contains on its face the following statement:

''Because of the many curves and angles and irregular boundaries on this Plat the exact dimensions of lots or subdivisions may not be accurately designated on this plat, therefore, dimensions shown hereon are subject to variations and errors and in such cases, the monuments and iron pins as originally placed by Theo. Hartman C. E. shall govern.''

The other plat in question contains absolutely no indication of the width of the right-of-way which was supposed to have been dedicated.

The plats were so defective that not a single engineer or surveyor could testify that the right-of-way could be found with absolute certainty. No map was introduced accurately fixing the location. In fact, it is undisputed that for the past 30 years the measurements on the plats have not been reliable. As I see it, the record was devoid of practical considerations by the aid of surrounding circumstances which could be made to supply the lack of definiteness in the maps. See: 16 Am. Jur. Dedication, Sec. 25, page 371. Therefore, since the appellee failed to meet the test required of it by the law, I respectfully dissent.