CITY of CABOT *v.*
Robert BRIANS and Louise Brians

CA 05-256                                                216 S.W.3d 627

Court of Appeals of Arkansas
Opinion delivered November 9, 2005

*Kenneth Williams*, Cabot City Attorney, and *Williams & Anderson P.L.C.*, by: *David F. Menz* and *Kelly S. Terry*, for appellant.

*Larry K. Cook*, for appellees.

JOHN B. ROBBINS, Judge. Appellant, the City of Cabot, appeals from an order that quieted title to a 60-foot-by-122-foot parcel of land in appellees, Robert and Louise Brians. The City argued that the parcel had been dedicated to it in a plat and bill of assurance approved by the City and filed by the developer in 1994. We agree and reverse and remand.

The parcel at issue is located in the Crestwood Subdivision, Phase II, in Cabot, Arkansas. The subdivision was developed by Blount Farms & Investments Corporation and consists of thirty-five lots and three named streets. Easement strips of six feet or twelve feet in width are located on lots throughout the subdivision.

The northeast corner of the subdivision is occupied by Lot 56, which is situated on a cul-de-sac at the intersection of two streets. Lot 55, which was purchased by appellees in 1995, is south of Lot 56 on the other side of the cul-de-sac. Lying between the two lots is a 60-foot-by-122-foot parcel that the developer's plat refers to as a "60' Access Easement." A general note on the plat states that this easement is "reserved" for a future right-of-way.

In December 2002, appellees sued the City and the developer, Blount Farms, claiming that, after they purchased their lot in 1995, they began using the parcel as their own. They asked that title to the parcel be quieted in them by virtue of seven years of open, visible, notorious, distinct, exclusive, and hostile possession. Blount Farms was served with process but did not answer the complaint. As a consequence, a default judgment was entered against Blount, stating that it had no interest in the parcel. The City responded, however, and claimed that the parcel had been dedicated to it. Thereafter, a bench trial was held to determine if the City had an interest in the parcel. As the trial court recognized, if the City did have an interest, appellees could not claim the parcel by adverse possession because Ark. Code Ann. § 22-1-204 (Repl. 2004) provides:

> No title or right of possession to realty by an incorporated town, city of the second class, city of the first class, school district, county, or the state may be defeated in any action or proceeding because of adverse possession.

Following the presentation of the evidence, the trial court found that the developer had reserved the parcel for itself, and,

thus, the City had no interest in it. Title was therefore quieted in appellees, and the City now appeals.

Quiet title actions have traditionally been reviewed de novo as equity actions. *See, e.g., White River Levee Dist. v. Reidhar*, 76 Ark. App. 225, 61 S.W.3d 235 (2001). However, we will not reverse the trial judge's findings in such actions unless the findings are clearly erroneous. *See id.* A finding of fact is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been committed. *Id.*

The City argues first that the developer's plat and bill of assurance unambiguously dedicated the parcel to the City. Alternatively, the City argues that, if the dedicatory instruments were ambiguous, the dedication was borne out by surrounding circumstances. We agree with both of these arguments.

As previously stated, the subdivision plat designated the 60-foot-by-122-foot parcel as an "access easement" and noted that this easement was reserved for a future right-of-way. The bill of assurance, which was filed by the developer prior to appellees' purchasing their lot, contained the following pertinent language:

> There are strips of ground shown on said plat and marked "Easements" reserved for the use of public utilities and or for drainage purposes, subject at all times to the proper authorities and to the easement herein reserved. Owners of the lots shall take title subject to the right of public utilities and the public.

> The filing of this Bill of Assurance and plat for the record in the office of the Circuit Clerk & Recorder of Lonoke County, Arkansas *shall be a valid and complete delivery and dedication of the streets and easements shown on the said plat.*

(Emphasis added.) When the plat and bill of assurance are read together, the City avers, they unambiguously dedicate the parcel in question to the City.

A dedication has been defined as the donation of land or the creation of an easement for public use. *Black's Law Dictionary* 442 (8th ed. 2004). A dedication may be accomplished by express written instrument, *see* 26 C.J.S. *Dedication* § 15 (2001), or often by maps or plats. *See* 26 C.J.S. *Dedication* § 17 (2001); 23 AM. JUR. 2D *Dedication* § 26 (2d ed. 2002). Plats or instruments by which dedications are made are construed as any other writing to ascer-

tain and give effect to the intention of the dedicator. *See generally* 26 C.J.S. *Dedication* §§ 66, 67 (2001). Plats should be construed fairly and reasonably, and unambiguous language should be given its manifest meaning. 26 C.J.S. *Dedication* § 67; *see also Barber v. Watson*, 330 Ark. 250, 953 S.W.2d 579 (1997) (construing a bill of assurance primarily by reference to the plain language of the document).

The plain language of the bill of assurance in this case provided that its filing, along with the plat, operated as a "valid and complete delivery and dedication of the streets *and easements*" shown on the plat. (Emphasis added.) The 60-foot-by-122-foot parcel is shown on the plat as an easement. Thus, upon the filing of the bill and the plat in 1994, the easements on the plat, including the parcel in question, were dedicated.

Appellees argue, however, that the dedicated easements referred to in the bill of assurance are the utility easements. However, this contention ignores the bill's plain language dedicating the "easements" shown on the plat without regard to whether they are utility easements. Appellees also argue that the parcel was not dedicated because it was not identified as a street. However, under circumstances like those in this case, it is unnecessary that the areas to be dedicated be marked as streets; the dedication is sufficient if it appears, from a consideration of the plat as a whole, with reference to the surrounding circumstances, that the spaces were intended to be devoted to public use. *City of Sherwood v. Cook*, 315 Ark. 115, 865 S.W.2d 293 (1993).

The evidence at trial offered a clear indication that the parcel was intended for public use. First, the bill itself states that the owners of the subdivision lots take title subject to the right of public utilities "*and the public.*" (Emphasis added.) Second, at trial, the City called witnesses John Ryan Benefield and James Von Tungeln, who testified that the City and the developer obviously intended that the parcel be dedicated to the City for use as a future street or passageway. Benefield, a former city engineer, said that, although he was not employed with the City when the subdivision plat was approved in 1994, his employment with the City in 2003 and 2004 required him to assist the City Planning Commission with subdivision approval, and he was familiar with the Crestwood development. According to him, the plat's reference to the parcel as a 60-foot access easement meant that "in the future, this area would be a city street used to access property to the east of this

subdivision." He observed that, although the area to the east of the subdivision was undeveloped, the City normally took note of whether there was adjacent, undeveloped property when viewing a subdivision plat and considered, among other things, whether there was access to unplatted pieces of land and whether there were multiple outlets to existing streets, which were important for utility service, emergency vehicles, and future subdivision. As an example, Benefield explained that, in the development of the first phase of Crestwood Estates, a piece of land, or "stub street" was left so that future development could be accessed and, in fact, under current regulations, such a stub street was required. Benefield stated that reserving an access area as a future right-of-way would allow it to be developed later as a street if needed. As he noted, the dimensions of the access easement were consistent with the City's streets.

Von Tungeln, an urban planning expert, testified that he had served as a consultant for the City in the past. Although he was not personally involved in the plat approval for this subdivision, he was familiar with the development. According to him, the 60-foot access easement mentioned on the plat was a case of the City's pursuing a policy of having multiple entrances and exits to subdivisions where possible. Specifically, he testified:

> [I]t's my opinion that they at that time wanted to leave open the possibility of connecting this subdivision with future development, saw no reason to actually build a street and pave it at that point and have the pavement sitting there, but instead, chose to have an access easement platted so that in the future, if that became a requirement and they did in fact connect this subdivision with other subdivisions, that the right-of-way would be there.

Von Tungeln stated that this was "done quite often." He also interpreted the plat's statement that the easement was reserved for a future right-of-way to mean that the Planning Commission intended the possibility that a connecting street be left open.

The above testimony, in conjunction with the language in the plat and bill of assurance, reveal that the parcel was intended for public use. Benefield and Von Tungeln offered virtually undisputed testimony that the developer and the City must have considered the parcel as dedicated. Further, appellees presented no witnesses of their own and did not rebut Benefield's or Von Tungeln's testimony in any meaningful respect.

Appellees further assert that the statement on the plat that the easement was "reserved" meant that it was reserved for the developer. It is true that, when a developer reserves a parcel of land, it may indicate his intention that the designated portion *not* be dedicated to the public. *See Arkansas State Highway Comm'n v. O.&B.*, 227 Ark. 739, 301 S.W.2d 5 (1957); *Fort Smith & Van Buren Bridge Dist. v. Scott*, 111 Ark. 449, 163 S.W. 1137 (1914). However, the surrounding circumstances must be considered in determining what the developer meant by using the word "reserved." *See, e.g., O.&B., supra; Scott, supra.* In *O.&B.*, the developer marked part of a plat as "reserved by owner for sale to Arkansas State Highway Department" and "reserved for highway use." The supreme court held that the parcels were not dedicated to the public, noting that it would be incongruous to both donate land to the public and reserve it for sale. In *Scott*, developers marked a strip of land with the notation "reserve." The supreme court held that the strip was not dedicated to the public because the parties in interest, including the city, had recognized the strip as the developers' private property and the developers and their successors had claimed the strip and exercised acts of ownership over it.

The circumstances in those cases differ markedly from those in the case at bar. Here, the developer used no language such as that in *O.&B.* that would indicate a clear intention to reserve the parcel to himself, nor did the developer exercise any acts of ownership over the parcel after the plat was filed, as in *Scott*; in fact, the developer in this case failed to appear and defend a lawsuit that asserted a claim to the reserved area.[1] Further, there is no proof beyond speculation to support the court's assumption that the developer reserved the parcel for the purpose of developing the property to the east. At the time of trial, the property to the east remained undeveloped, and there was no evidence that the developer had ever owned it. Additionally, unlike the *O.&B.* and *Scott* cases, here, we have a plat designating the parcel as an easement and future right-of-way and a bill of assurance expressly stating that easements on the plat were dedicated. Finally, we note that any doubt or ambiguity in the meaning of a dedicatory plat is construed most strongly against the dedicator and to the reasonable

---

[1] The dissent's position is that the developer reserved an "access easement" for a "future right-of-way" across the subject property. However, if the developer continued to own this property it is illogical that it needed to also "Reserve" it for some particular purpose.

advantage of the grantees of the dedicated use, *i.e.*, so as to benefit the public rather than the donor. *See* 11A Eugene McQuillen, *The Law of Municipal Corporations* § 33.26 (Rev. 3d ed. 2000); 26 C.J.S. *Dedication* § 67; *Ranier Av. Corp. v. City of Seattle*, 80 Wash. 2d 362, 494 P.2d 996 (1972), *cert. denied*, 409 U.S. 983 (1972).

Appellees also contend that the City did not confirm or accept the supposed dedication by passing an ordinance as required by Ark. Code Ann. § 14-301-102 (1987), which provides:

> No street or alley which shall be dedicated to public use by the proprietor of ground in any city shall be deemed to be a public street or alley, or to be under the care and control of the city council, unless the dedication shall be accepted and confirmed by an ordinance specially passed for that purpose.

Whether or not the parcel in the case at bar can be described as an existing street or alley, our courts have recognized that, despite the language in this statute, whenever a dedicator-owner of land makes and files a plat and thereafter lots are sold with reference to it, such constitutes an irrevocable dedication of any street or passageway for public use shown or indicated on the plat. *See City of Sherwood, supra; Wenderoth v. City of Fort Smith*, 256 Ark. 735, 510 S.W.2d 296 (1974); *see also Arkansas State Highway Comm'n v. Sherry*, 238 Ark. 127, 130-31, 381 S.W.2d 448, 451 (1964) (stating that an owner of land who sells lots by reference to a plat, makes an irrevocable dedication of the streets, alleys, squares, parks, and "other public places marked as such on the plat" to the public use and that the dedication "becomes irrevocable the moment that these acts occur"); *Gowers v. City of Van Buren*, 210 Ark. 776, 780, 197 S.W.2d 741, 743 (1946) (stating that, where lots have been sold by reference to a plat, "no formal acceptance by the city" is necessary because, by that act, the dedication becomes irrevocable). In *Bushmiaer v. City of Little Rock*, 231 Ark. 848, 333 S.W.2d 236 (1960), our supreme court addressed the same argument that appellees now make and stated:

> Relative to this point, appellants rely upon [14-301-102], which provides that streets and alleys, dedicated to public use, shall be accepted by the city through ordinance. The record does not reflect that the dedication, here in question, has been accepted by city ordinance. The same argument was made in *Brewer v. City of Pine Bluff*, 80 Ark. 489, 97 S.W. 1034 (1906). As previously

pointed out, this land was platted, the streets dedicated, lots sold by reference to the plats, and the public has used the street for many years. In the *Brewer* case, it was shown that the dedication was never accepted by city ordinance, but this Court said:

> "But the question is not important in this case, for, as before stated, the dedication of it as a public way has now become irrevocable, and the city can accept it at any time. Meanwhile the public has the right to use it, and the plaintiff has no right to obstruct it."

*Bushmiaer,* 231 Ark. at 855, 333 S.W.2d at 241.

Although *Bushmiaer* and *Brewer* involved situations where, at the time of the lawsuit, there had been public use of the disputed area — unlike the situation in the case at bar — this distinction is not critical. The dedication becomes irrevocable upon the sale of the lots. *See generally Wenderoth, supra,* where a dedication was held to have occurred even though there had been no public use of the parcel in question. Moreover, our courts have declared that, once the dedication has occurred, the city may accept it at any time or when the necessity should arise. *See City of Sherwood, supra; Sherry, supra; Bushmiaer, supra; Gowers, supra.*

In light of these authorities, the City need not have formally accepted or confirmed the dedication of the parcel under the circumstances of this case or made immediate use of the parcel once acquired. The irrevocable dedication occurred when lots were sold by reference to the plat, and the City, at that point, could accept the dedication at any time. Such dedication and right to accept it invested the City with, at the very least, a "right to possession" of the parcel, which, under Ark. Code Ann. § 22-1-204, would bar appellees' adverse-possession claim. *See generally Wood v. City of El Dorado,* 237 Ark. 681, 375 S.W.2d 363 (1964); *Bushmiaer, supra* (recognizing that an adverse claimant cannot acquire title to property that has been dedicated to the city).

Based on the foregoing, we conclude that the trial court clearly erred by quieting title to the parcel in appellees. We therefore reverse and remand this case for entry of an order consistent with this opinion.

Reversed and remanded.

HART, NEAL, VAUGHT, and CRABTREE, JJ., agree.

GRIFFEN, J., dissents.

WENDELL GRIFFEN, Judge, dissenting. The issue in this case is whether the subject property was reserved to the developer (who defaulted his interest to the Brians) or whether the developer dedicated the property to the City of Cabot. I would affirm because the developer reserved the property in question and because, even if the property was dedicated, the circumstances do not support a finding that the City accepted the dedication. Thus, to reverse would put the City in a position that neither the developer's actions nor the City's conduct supports.

The relevant portions of the bill of assurance, examined more fully, are as follows:

> There are strips of ground shown on said plat and marked "easements" reserved for the use of public utilities and/or for drainage purposes, subject at all times to the proper authorities and to the easement herein reserved. Owners of the lots shall take subject to the right of public utilities and the public.

> The filing of this Bill of Assurance and plat for record in the office of the Circuit Clerk & Recorder of Lonoke County, Arkansas, shall be a valid and complete delivery and dedication of the streets and easements shown on the said plat.

In addition, Note 7 of the plat specifies: "Access easement shown between Lots 55 and 56 reserved future right-of-way." Every other easement on the plat is merely labeled as an "easement."

The determinative factor is whether the developer intended the above language to function as a reservation or a dedication. Dedication is ordinarily considered as the opposite of reservation. *Arkansas State Highway Comm'n v. O. & B., Inc.*, 227 Ark. 739, 301 S.W.2d 5 (1957). Thus, the term "reserved" is a term of art that does not evince an intent to dedicate property to a city but to retain an interest in property. The majority contends in footnote 1 of its opinion that if the developer continued to own the property, then it is "illogical" that the developer needed to also reserve the property for a particular purpose. It is true that the developer was not *required* to reserve the property for a particular purpose. However, the developer clearly *was* required to reserve any interest in the property that he intended to retain — if the reservation of the access easement had *not* been made, then the property would have been dedicated to the City via the language in the bill of assurance and the plat. Thus, the logical conclusion is that, by

taking the *additional* step of reserving the access easement, the developer intended not to dedicate that property to the City but to reserve it for future use as he saw fit. Accordingly, it was not "illogical" for the developer to dedicate some property but to reserve other property for a specific use. To the contrary, the fact that the developer here reserved property for a specific purpose convincingly demonstrates that *he* intended to determine the future use of the property, rather than to allow the City to make that determination.

The majority relies on the language from the bill of assurance stating that the filing of the plat and the bill of assurance shall constitute a "valid and complete delivery and dedication of the streets and easements shown on the said plat." Due to that language, and due to the fact that the disputed piece of property is an easement, the majority concludes that the disputed property, which contains the word "easement" in its description, was dedicated to the City because *all* easements under the plat are dedicated to the City. This is not true.

The majority, while accusing the Brians of ignoring the plain language of the plat and bill of assurance, itself ignores the plain language of the plat and bill of assurance dedicating "easements" as public-usage easements, but specifically reserving the subject property as an "*access* easement" (emphasis added). In so doing, the majority points to the language in the bill of assurance indicating that the owners of the lots take title subject to the rights of public utilities and the public. However, the majority disregards the fact that this provision more fully states:

> There are strips of ground shown on said plat and marked "easements" reserved for the use of public utilities and/or for drainage purposes, subject at all times to the proper authorities and to the easement herein reserved. Owners of the lots shall take subject to the right of public utilities and the public.

Thus, while the owners of the lots take subject to the rights of the public utilities and the public, the rights of the public utilities and the public are limited by the reservation and other limiting language in the plat and bill of assurance in this case.

The plain, unambiguous language as quoted above indicates that the lots marked merely "easement" are the lots intended for public purposes. However, the lot in question is marked, "access easement." On its face, the reservation of an "access easement" for

a "future-right-of-way" where the remaining easements are dedicated for public usage evinces a clear intent to treat the subject property differently, and not as an easement presently dedicated for public usage. *See Arkansas State Highway Comm'n v. O. & B., Inc., supra,* (affirming a jury verdict finding no dedication where the owner reserved the land for sale to the public agency involved).

The majority also claims that the reservation is ambiguous and thus, that the surrounding circumstances must be considered in determining what the developer meant by using the word "reserved." However, when the language of the bill of assurance and plat is construed in its entirety, there is no ambiguity. Moreover, tellingly, none of the City's witnesses testified as to the *surrounding circumstances at the time the plat was adopted,* except for the City Clerk, who merely testified that the City did not pass an ordinance accepting the plat. The testimony by John Benefield and James Von Tungeln, who were not employed by the City at the time the plat was adopted, merely established the Cabot City Planning Commission interpreted the language in Note 7 of the plat stating that "access easement shown between Lots 55 and 56, reserved future right-of-way" to mean that in the future that area would be a city street used to access property east of the subdivision.

Quite simply, the fact alone that the City would *presently* benefit if the developer had dedicated the property to the City in 1994 does not establish that it was the developer's intent to do so or that he thereafter did so. Nor is it relevant that under the City's *current regulations,* which were not in effect when the plat was adopted, that a "stub street" is required to access future development. Further, it does not matter that the trial court speculated or assumed that the developer reserved the land for the purpose of developing the property to the east or even, as the City asserts, that the developer may have reserved the property in 1994 with the *eventual* intent to provide the City a future right-of-way. The owner's intent must be ascertained from the acts of the owner and not from any purpose hidden in his mind. *Fort Smith & Van Buren Bridge Dist. v. Scott,* 111 Ark. 449, 163 S.W. 1137 (1914). Thus, it matters only that the developer did not, when the plat was filed or thereafter, actually dedicate the property to the City.

Moreover, the majority errs in holding that the City can claim fee title to the land and thereby defeat the Brians's adverse possession claim because "the dedication was borne out by surrounding circumstances." Although the trial court did not appear

to rely on this fact, I would affirm on this alternate ground because it is clear that the plat was not accepted by a City ordinance, as is required pursuant to Ark. Code Ann. § 14-301-102 (1987). This statute provides:

> [n]o street or alley which shall be dedicated to public use by the proprietor of ground in any city shall be deemed to be a public street or alley, or to be under the care or control of the city council, unless the dedication shall be accepted and confirmed by an ordinance specially passed for that purpose.

It is clear here that the City did not enact an ordinance accepting the plat and that even if the City did accept the plat, that acceptance never became irrevocable.

As previously noted, the only surrounding circumstance at the time the plat was adopted that was established was that the City did not pass an ordinance accepting the plat. Under the 1994 subdivision regulations in effect at the time the plat was filed, the City did not require that an ordinance be passed in order to accept a plat — only approval by the City Council was required. Thus, the City passed no ordinance to accept the plat in this case. However, despite the fact that the City of Cabot in 1994 did not require the City to pass an ordinance to accept a plat, Arkansas law did impose that requirement.

Despite this requirement, the majority insists that the City gained fee title to the property, reasoning that the City's acceptance has become irrevocable since the plat was filed and plots have been sold in reference to the plat. It is true that where the plat is filed and lots are sold in reference to it, the *public areas*, such as streets, passageways, public use squares, or other public places shown on the plat become public property, the dedication becomes irrevocable, and a city may thereafter accept the dedication at any time. *City of Sherwood v. Cook,* 315 Ark. 115, 865 S.W.2d 293 (1993); *Arkansas State Highway Comm'n v. Sherry,* 238, Ark. 127, 381 S.W.2d 448 (1964). However, the City here has not gained fee title by this method — the area in question is not a public area because it was reserved, it was not used for public purposes, and it was *privately* used.

The majority cites to *Wenderoth v. City of Fort Smith,* 256 Ark. 735, 510 S.W.2d 296 (1974), to support that a dedication of public areas may become irrevocable even where there has been no public use of the property in question. In that case, the trial court

specifically determined that a twenty-five foot strip of property was dedicated to the city for street purposes even though the area had not been used by the public. However, that case is distinguishable. First, the plat in that case specifically stated that the streets shown were dedicated for public use as highways and contained two similar twenty-five foot strips of land that had been named as streets. Second, the land in question had never been used by the public, but also had never been treated as private property. Finally, the party in *Wenderoth* was estopped from arguing the land in question had been dedicated as a public street when they had previously taken an inconsistent position at a meeting with city officials.

By contrast, here, it cannot be said that the property at issue was "dedicated" in any respect, much less as a public area — the majority's opinion in this regard simply ignores the effect of the reservation in Note 7 of the plat. Simply because a plat is filed and lots are sold with reference to the plat does not mean that *all* of the property shown on the plat is thereby dedicated to the public. The fact that public areas become dedicated to the city upon filing of a plat does not preclude a developer from reserving an interest in certain property; to the contrary, that is the precise purpose of a reservation.

In any event, the property in this case is not a public area as was the property in *Wenderoth*. Although the property could have been dedicated or developed as an extension of Birchwood Drive, which borders the property on the west, it was not so dedicated or developed. Further, unlike the property in *Wenderoth*, nothing on the plat supports that there were other similar lots that were reserved for public use. To the contrary, as noted previously, the property at issue is the only property that is labeled an access easement that is reserved for future right-of-way.

Like the property in *Wenderoth*, the property in this case was not used by the public; however, unlike the property in *Wenderoth*, the instant property was put to private use that rose to such a level that the trial court found that the Brians had possessed the property by adverse possession. Thus, unlike the property owners in *Wenderoth*, it cannot be said here that the Brians ever averred that the property was public property or that they should be estopped from asserting that the property was reserved.

Accordingly, even assuming that the plat was properly accepted by the City, that acceptance did not grant to the City fee title to that property included in the plat that was *not* a public area

and that was not otherwise dedicated to the City. For the above reasons, I would affirm the trial court's order quieting title in the Brians.