The Honorable Shane Broadway State Senator 201 Southeast Second Street Bryant, AR 72022-4025
Dear Senator Broadway:
I am writing in response to your request for an opinion concerning the following factual scenario:
Saline County has a situation where a real estate developer began the process of developing a subdivision in the County. The developer filed a plat with the Saline County Planning Board and with the Office of the Saline County Clerk and began selling lots in the subdivision. The sale of the lots without final approval of the Saline County Planning Board was in contravention of the Saline County subdivision rules and regulations.
The developer never completed the plat and the roads were never accepted by the County. Subsequently, the developer filed for protection of the U.S. Bankruptcy Court. The roads are in deplorable condition to the point of being dangerous to travel.
Against this backdrop, you have posed the following questions:
1. Since the roads at issue were never accepted by Saline County, who owns them?
2. Who is responsible for the maintenance and upkeep of the roads?
RESPONSE
I cannot answer your first question because I am not equipped or empowered as a fact-finder to decide any issues concerning claimed rights or interests in the roads. With regard to your second question, the facts you have provided suggest that the County has no obligation to maintain the roads in question. Although additional facts may bear on the issue, if fee title remains in the adjacent landowners, it may well be that the property owners are responsible for maintaining the roads. However, I cannot definitively decide the matter. Nor can I speculate further regarding the status of the roads or any issues concerning claimed rights or interests therein. I am not equipped or empowered to undertake the fact-finding process that necessarily attends such an inquiry.
Question 1 — Since the roads at issue were never accepted by Saline County, who owns them?
The answer to this question will turn on a review of facts not before me. Specifically, the answer probably depends largely upon the provisions of the deeds to the abutting property owners, the developer's original plat of the area, and the bill of assurance. The outcome of the bankruptcy proceedings may also bear on the question. If the developer did not retain any ownership in the roads when he platted the property and sold the lots, it may be that the abutting property owners actually hold the ultimate ownership interest in the roads of the development. While the platted property may be subject to certain easements or public rights-of-way, see generally A.C.A. § 14-17-208(b) and (d) (Supp. 2005) and City of Cabot v. Brians, 93 Ark. App. 77, ___ S.W.3d ___ (2005); Wenderoth v. City of Fort Smith, 256 Ark. 735, 510 S.W.2d 296 (1974); Ark. State Hwy. Comm. v. Sherry, 238 Ark. 127, 381 S.W.2d 448
(1964),[1] the presumption under Arkansas law is that the conveyance from the developer to the purchasers extended to the middle of the streets, unless a contrary intent is indicated in the plat and the deeds. See generally Freeze, Mayor v. Jones Harvel, 260 Ark. 193,199-200, 539 S.W.2d 425 (1976), citing Lincoln Hotel Co. v. McGehee,181 Ark. 1117, 29 S.W.2d 668 (1930) (ownership of the fee in the public right-of-way remained in the abutting owners together with all rights not inconsistent with the public use to which the property was dedicated).
I cannot speculate further regarding ownership of the roads, particularly given your reference to a bankruptcy action. This interjects possible additional facts bearing on the matter and further illustrates why I cannot definitively decide any ownership issue.
Question 2 — Who is responsible for the maintenance and upkeep of the roads?
Although a conclusive answer to this question also requires a review of all the surrounding facts and circumstances, the limited information before me suggests that the roads are probably not the responsibility of the County. This conclusion is suggested by your statement that "the roads were never accepted by the County." This clearly indicates that the roads have not been designated as county roads by the County Judge. See, e.g., A.C.A. § 27-66-207(a) (Supp. 2005) (authorizing the county judge, "in his or her discretion," to "designate as a county road any street or road dedicated to the public as a public thoroughfare, provided that a bill of assurance making the dedication is properly recorded.") Because the county judge generally has discretion to determine whether to designate a road as a county road, see Op. Att'y Gen. 89-135, the responsibility for repair that ordinarily attends such a designation would not appear to attach to the roads in question.
Your statement that "the roads were never accepted by the County" also potentially points to the following provision, which was added to A.C.A. § 27-66-207 in 2005:
(b) Unless a plat clearly reflects that roads are private roads, the county recorder shall not accept any plats in the unincorporated area of the county without the county court's acceptance of:
 (1) Roads for perpetual maintenance; and
 (2) Dedication of land for public purposes.
A.C.A. § 27-66-207(b) (Supp. 2005) (added by Acts 2005, No. 861, § 1). See also A.C.A. § 14-17-208(l)(2)(A) (Supp. 2005) ("The county recorder shall not accept any plats in the unincorporated area of the county without the county court's acceptance of . . . [r]oads for perpetual maintenance[.]")[2]
I do not know when the subdivision at issue was platted, and thus cannot determine whether these provisions, which became effective on August 12, 2005, apply to the situation at hand.[3] If the subdivision was developed after August 12, 2005, however, your statement that the County never accepted the roads could be further evidence that the County is not obligated to maintain them, in light of subsections27-66-207(b) and 14-17-208(l)(2)(A), supra.
While the limited facts before me therefore suggest that no duty has arisen on the part of the County to maintain the roads in question, I must emphasize I am not situated to definitively decide the matter. The roads may be the obligation of the individual land owners, depending upon whatever rights or obligations attended the conveyance of the lots, as well as whatever rights or obligations flowed from the referenced bankruptcy filing. I am neither sufficiently informed nor authorized to speculate further on what remaining facts or issues might bear on the question of the roads' maintenance and upkeep.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Subsections 14-17-208(b) and (d) invest counties with the power legislatively to approve regulations that condition development upon the developer's providing specified easements and dedicated rights-of-way to the public. The cited cases reflect the common law principle that "whenever a dedicator-owner of land makes and files a plat and thereafter lots are sold with reference to it, such constitutes an irrevocable dedication of any street or passageway for public use shown or indicated on the plat." City of Cabot, supra,93 Ark. App. at 84.
[2] Prior to its amendment in 2005, subsection 14-17-208(l) only applied to counties with populations of 300,000 or greater. See A.C.A. § 14-17-208(l) (Repl. 1998). The limitation to such counties was removed by Act 862 of 2005. I note that the provision added to A.C.A. §27-66-207(b), supra, is similar to this subsection 14-17-208(l), but the latter subsection does not contain the exception found in A.C.A. §27-66-207 regarding a plat that "clearly reflects roads are private roads." In my opinion, the exception nevertheless applies under subsection 14-17-208(l), based on the general rule of interpretation requiring that two acts passed during the same legislative session and addressing the same subject must be reconciled and read harmoniously so that both can be given effect, if possible. See generally Sargent v. Cole, 269 Ark. 121, 598 S.W.2d 749 (1980); Cordell v. Kent,174 Ark. 503, 506, 295 S.W. 404 (1927). In my opinion, the 2005 acts can be reconciled by noting that Act 862 was only concerned with removing the statute's limited application to counties with populations over 300,000. When read together, Acts 861 and 862 of 2005, in my opinion, establish a requirement that regardless of the county's size, the recorder may not accept a plat for record without the county court's acceptance of roads for perpetual maintenance and dedication of land for public purpose, unless the plat clearly reflects roads are private roads.
[3] The 2005 acts under which these provisions were enacted became effective on August 12, 2005. See generally Op. Att'y Gen. 2005-110
(regarding the effective date of legislation passed during the Eighty-Fifth regular session with no emergency clause or specified effective date).