## J. MICHAEL ENTERPRISES, INC. *v.* Robert OLIVER

CA 07-537                                      270 S.W.3d 388

Court of Appeals of Arkansas
Opinion delivered December 19, 2007

[Rehearing denied January 23, 2008.]

*Matt Bishop*, for appellant.

*Dossey & Burke, PLC*, by: *Jerry B. Dossey*, for appellee.

Sam Bird, Judge. J. Michael Enterprises, Inc. (JME), brings this appeal from a judgment of the Benton County Circuit Court quieting title to thirty-nine acres in appellee Robert Oliver. The court also awarded Oliver $2,500 in punitive damages and $5,000 in attorney's fees. JME raises three points on appeal in which it challenges the quieting of title in Oliver on the basis that Oliver had

not paid the taxes on the property for seven years and that the tax deed to Oliver contained an invalid description, as well as the award of punitive damages. Finding no merit in any of these points, we affirm.

### Stipulated Background Facts

In 1964, Paula Weir took title by warranty deed to forty acres described as the Southeast Quarter of the Northeast Quarter of Section 9, Township 18 North, Range 29 West, in Benton County. In 1965, Weir had a survey conducted which carved a one-acre tract out of the forty-acre tract. Weir and her husband executed a deed of trust to the one-acre tract. The deed of trust was foreclosed by the lender and the lender purchased the one-acre tract at the foreclosure sale. In 1970, Lulu Woodington purchased the one-acre tract from the lender. In July 1996, Woodington filed suit against Weir seeking to quiet title to the one-acre tract. A decree quieting title in Woodington was entered in August 1996, and an amended order was entered on September 23, 1996. The description in the decree was different from the 1965 survey description.

In 1987, Weir successfully sued to set aside an earlier tax sale of the thirty-nine-acre tract on the basis of an improper tax sale. The complaint alleged that the legal description was improper and that the proceedings to quiet title after the tax sale were defective in that Weir was not made a party to those proceedings.

Weir failed to pay the property taxes on the property after 1989, and the property was forfeited to the State of Arkansas. In November 1996, Oliver received a tax deed to the thirty-nine-acre tract. The description of the property contained in the tax deed was "SE 1/4 NE 1/4 EXC 1 A NW1/4 PT," together with references to the appropriate section, township, and range as shown by the notation "9 18N 29W." In January 1997, Oliver and Woodington exchanged quitclaim deeds in which each quit-claimed his or her interest in the other's property. In other words, Woodington quitclaimed whatever interest she had in the thirty-nine-acre tract to Oliver, and he did the same in regards to the one-acre tract. Woodington then conveyed the one-acre tract to Eric Cabledue by warranty deed also recorded on January 2, 1997. On December 1, 2005, Weir and her husband each executed quitclaim deeds to the entire forty-acre tract to JME. The deeds were recorded on December 5, 2005.

Oliver filed suit seeking to quiet title to his thirty-nine acre tract. He asserted that he had paid the taxes on the property for

more than seven years under color of title. The complaint also asserted that JME's action in obtaining and recording the quitclaim deeds from the Weirs was a violation of Ark. Code Ann. § 5-37-226 (Supp. 2007) and sought treble actual and punitive damages as provided by that section. JME answered, denying the material allegations of the complaint. JME also filed a counterclaim in which it sought a declaratory judgment that the tax deed to Oliver was invalid based on the legal description being legally insufficient.

## The Evidence

At trial, Oliver testified that he had paid all of the property taxes owed on the thirty-nine-acre tract since he purchased the property at the tax sale. Oliver also said that he paid the back taxes owed on the property. Both Oliver and Eric Cabledue testified that the exchange of deeds between Oliver and Lulu Woodington was necessitated when Woodington was attempting to sell her one-acre tract to Cabledue and it was discovered that the description of her tract was incorrect. Cabledue said that he had paid all of the taxes on his property since he acquired it. Cabledue also considered the quitclaim deeds executed by Paula Weir and her husband to JME to be a cloud on his title.

Title examiner Phil Bronson testified that, after the exchange of quitclaim deeds between Oliver and Woodington, he issued a title insurance policy for Woodington's conveyance to Cabledue. He also said that he relied on assessment cards and other records showing the assessment and payment of taxes on property. According to Bronson, the records show that Oliver was paying the taxes on thirty-nine acres of the forty-acre tract. On cross-examination, he acknowledged that he could not tell from the legal description of the tax deed or the information in the Assessor's Office where Cabledue's one-acre tract was located within the forty acres. He asserted that the same legal description on Oliver's tax deed and the records in the Assessor's Office describe two different thirty-nine-acre tracts because of the changed description of the excepted one-acre tract.

Thurstle Mullen, the president and sole stockholder in JME, testified that JME does not have any specific business and that he purchases property in the corporate name. He described JME as a shell company that owns real estate. Mullen said that he prepared the deeds that the Weirs executed to convey their interest to JME after he determined that the tax deed to Oliver did not describe any lands. He acknowledged that he was unaware of Cabledue's

ownership of the one-acre tract when he obtained the quitclaim deeds from the Weirs. Mullen also could not say that he had researched the tax assessment records before obtaining the quitclaim deeds. He said that, when he did his research, the records showed that Oliver was paying taxes on thirty-nine acres of the forty-acre tract but not which thirty-nine acres.

Shirley Sandlin, the recently retired Benton County Assessor, testified that the assessor's office keeps records on maps and cards and that any parcel within the county can be located. She said that the card for the forty-acre tract shows the exchange of deeds between Oliver and Woodington and that the entire forty-acre tract has been assessed in the names of either Oliver or Cabledue since 1997. She said that the Oliver and Cabledue tracts cannot be confused with each other. Sandlin had used the legal description contained in the deed from Woodington to Oliver in assessing Oliver's property. She described the problem as being with only ten acres in the northeast portion of the forty-acre tract. She added that Oliver's legal description never changed on the card in the assessor's office because all of Oliver's land is located within the quarter-quarter description.

Greg Hoggatt, the Tax Collector for Benton County, testified that both Oliver and Cabledue had paid the taxes on their respective parcels since 1997. He said that Oliver's tax sale purchase included paying the taxes owed for the years 1990 through 1995.

### The Circuit Court's Ruling

The circuit court ruled from the bench and found that Oliver had met his burden of proving his title. The court noted that the parcel number could have been used to obtain the history for the entire forty-acre tract and its correct description. The court also found that both the tax deed and the quitclaim deed from Woodington to Oliver constituted color of title for Oliver and that Oliver had paid the property taxes for more than seven years.

On January 17, 2007, Oliver filed a motion pursuant to Ark. Code Ann. § 5-37-226(a) (Supp. 2007). That statute makes it unlawful to file any instrument of record clouding or affecting the title or interest of the true owner with the intent of clouding the title or procuring money from the true owner. Under subsection (c), an owner who brings suit to remove the cloud from his title is entitled to three times actual damages, punitive damages, and costs, including attorney's fees. JME filed a response to the motion.

In its written judgment entered on January 31, 2007, the circuit court, in addition to the findings relative to quieting title in Oliver, found that JME procured the quitclaim deeds from the Weirs for the purpose of obtaining money from Oliver and awarded Oliver $2,500 in punitive damages and $5,000 in attorney's fees. On March 1, 2007, JME filed a motion to modify the judgment pursuant to Ark. R. Civ. P. 60, as well as a notice of appeal from the judgment. On March 30, 2007, the circuit court entered an amended judgment. JME filed an amended notice of appeal on April 9, 2007.

## Standard of Review

Quiet title actions have traditionally been reviewed de novo as equity actions. *City of Cabot v. Brians*, 93 Ark. App. 77, 216 S.W.3d 627 (2005). However, we will not reverse the circuit court's findings in such actions unless the findings are clearly erroneous. *See id.* A finding of fact is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been committed. *Id.*

## Arguments on Appeal

JME's first and second points, which we address together, are that the circuit court erred in quieting title in Oliver because the legal description contained in the tax deed to Oliver was insufficient, and that, because of the indefiniteness of the description, Oliver could not rely on either the tax deed or the quitclaim deed from Woodington as color of title. We disagree.

A tax deed is sufficient if the description itself furnishes the key through which the land might be definitely located by proof *aliunde*. *Liggett v. Church of Nazarene*, 291 Ark. 298, 724 S.W.2d 170 (1987). A tax deed may be declared invalid for want of a sufficient legal description of the land involved. *Payton v. Blake*, 362 Ark. 538, 210 S.W.3d 74 (2005); *see also Gardner v. Johnson*, 220 Ark. 168, 246 S.W.2d 568 (1952) (invalidating a deed containing the description: "SW corner NE 1/101 N.Y. 63, 4 NE 1/4 Section 1, Township 7 North, Range 4 West, 5 acres E of R"); *Sutton v. Lee*, 181 Ark. 914, 28 S.W.2d 697 (1930) (recognizing as invalid the description: "Parts of lots 3 and 4 in block 36 in the city of Hot Springs, Arkansas"); *Walls v. Mills*, 149 Ark. 670, 225 S.W. 225 (1920) (invalidating a deed containing the description: "Pt. NW NW Section 7 Township 12 S, Range 29 W. 11.16 acres").

Unlike the cases cited above, the description here is sufficient because Oliver owns thirty-nine of the forty acres in the quarter quarter and the question is the location of the one acre he does not own. That can easily be determined by reference to the records in the assessor's office. Therefore, the tax deed could properly be considered color of title.

In its argument directed to the Woodington deed to Oliver as color of title, JME relies on *Bailey v. Jarvis*, 212 Ark. 675, 208 S.W.2d 13 (1948), and *Weast v. Hereinafter Described Lands*, 33 Ark. App. 157, 803 S.W.2d 565 (1991), for the proposition that one cannot "manufacture" color of title. Those cases have no application here because the exchange of deeds between Woodington and Oliver was necessary to align the legal description of Woodington's property with its actual placement on the ground, as shown by exhibit 22. The Woodington quitclaim to Oliver contains proper metes-and-bounds descriptions of both the forty-acre tract and the one-acre tract belonging to Cabledue.

JME also argues that, because the descriptions in Oliver's and Cabledue's deeds are insufficient, Oliver cannot prove the exact thirty-nine acres on which he has been paying the property taxes. However, the testimony was that the description contained in the exchange of quitclaim deeds has been used to assess the property since 1997 and that the taxes have been paid on this assessment since that time.

In JME's third and final point, it argues that the circuit court erred in awarding Oliver $2,500 in punitive damages and $5,000 in attorney's fees, pursuant to Ark. Code Ann. § 5-37-226(a).[1] Section 5-37-226(a) requires a two-prong test: first, that

---

[1] Section 5-37-226(a) provides:

(a) It is unlawful for any person with the knowledge of the instrument's lack of authenticity or genuineness to have placed of record in the office of the recorder of any county any instrument:

(1) Clouding or adversely affecting:

(A) The title or interest of the true owner, lessee, or assignee in real property; or

(B) Any bona fide interest in real property; and

(2) With the intent of:

the instrument be filed with knowledge that it is not genuine or authentic and, second, that the filing is with the intent either to cloud or adversely affect the owner's interest in the property or with the intent to procure money from the owner in order to clear the title. JME argues that neither prong has been met and that Oliver offered no proof of his actual damages and, therefore, an award of punitive damages is improper. The circuit court made an express finding that JME obtained the quitclaim deeds from the Weirs for the purpose of obtaining money from the true owner. The court did not make a finding that the instrument was filed with knowledge that it was not genuine or authentic. However, such a finding was implicit when the court awarded punitive damages pursuant to section 5-37-226. Also, both findings are supported by the evidence that JME prepared the quitclaim deeds to the entire forty acres, despite the one acre having been carved out in 1965; that JME was simply a shell company; and that there were no revenue stamps on its quitclaim deeds. Arkansas Code Annotated section 26-60-110(b) provides, subject to exceptions not applicable here, that no instrument evidencing a transfer of title shall be recorded without the attachment of the revenue stamps. Further, the letter attached to Oliver's complaint implies that JME was seeking money from Oliver in order to clear Oliver's title.

Oliver did not offer any proof as to his loss or damages during the trial; he did offer an affidavit stating the amount of attorney's fees he incurred in prosecuting the suit. JME, citing *Hale v. Ladd*, 308 Ark. 567, 826 S.W.2d 244 (1992), argues that an award of punitive damages without an award of compensatory damages cannot stand. However, that rule has no application in the present case because the award was not based on a common-law cause of action; rather, it was based on a statutory remedy. As such,

---

(A) Clouding, adversely affecting, impairing, or discrediting the title or other interest in the real property which may prevent the true owner, lessee, or assignee from disposing of the real property or transferring or granting any interest in the real property; or

(B) Procuring money or value from the true owner, lessee, or assignee to clear the instrument from the records of the office of the recorder.

the circuit court could have awarded punitive damages without first having awarded compensatory damages.

Affirmed.

PITTMAN, C.J., and ROBBINS, J., agree.