2013 Ark. App. 189

**Ricky Allen POPE and Christine Shepherd Pope, Appellants**

v.

**JOHN HANCOCK MUTUAL LIFE INS. CO., Appellee.**

No. CA 12–735.

Court of Appeals of Arkansas.

March 13, 2013.

Tapp Law Firm, Hot Springs, by: Tylar C.M. Tapp, III, for appellants.

Friday, Eldredge & Clark, LLP, Little Rock, by: Bruce B. Tidwell, for appellee.

RHONDA K. WOOD, Judge.

John Hancock Mutual Life Insurance Company owns the timber rights to 179 acres in Hot Spring County. Its rights are recorded in a timber deed, which incorporates an underlying agreement of sale. Hancock's rights to the timber were set to expire at the end of 2010. By December 2010, Hancock had yet to cut down any trees, then valued at $750,000. Hancock decided to extend the lease another year as provided in the agreement and deed.[1] To that end, it researched the land records and discovered that Ricky and Christine Pope were the surface owners of the property.[2]

---

1. IP Timberlands originally sold the timber rights to Hancock in December 1995.

2. IP conveyed the surface rights to Sustainable Forests, LLC in December 1996. Sustainable Forests sold the land to Blue Sky Timber

On December 3, 2010, Hancock sent a notice letter and check to the Popes' residence via Federal Express, notifying them of Hancock's intent to extend the deed. The package was delivered on Monday, December 6, and Hancock filed a timber deed extension the next day. The check, written for $13,450, was never cashed. In March 2011, the Popes contacted Hancock and threatened to call law enforcement if it attempted to enter the property. According to the Popes, Hancock had no rights to the timber. As a result, Hancock brought suit for quiet title, declaratory judgment, and an injunction.

Both parties filed motions for summary judgment. The court entered partial judgment in favor of Hancock, ruling the Popes had constructive notice of Hancock's timber deed and agreement of sale, but reserved for trial whether Hancock's mailing of the notice and check extended the deed. After a bench trial, the court ruled that Hancock made a good-faith attempt to notify the Popes of its intent to extend its rights under the timber deed and agreement. The court found that Hancock's mailing of the check through Federal Express triggered the mailbox rule and that delivery of the check extended the deed's term one more year. The Popes appeal both the partial summary judgment and final order.

On appeal, we address the following arguments: (1) the Popes are not bound by the agreement of sale referenced in the timber deed and, accordingly, Hancock has no rights to the timber; and (2) even if the Popes are bound by the agreement, (i) Hancock failed to provide proper notice of its intent to extend the lease and (ii) the court erred when it applied the mailbox

Properties, LLC in March 2003. Finally, Blue Sky sold the property to the Popes for $80,000 in July 2008. All of the deeds in the chain of title were properly recorded.

rule. We reject these arguments and affirm the circuit court.

## I. Whether the Popes are Bound by the Deed and Agreement

At the summary-judgment stage, the circuit court ruled that the Popes owned the property subject to Hancock's timber rights. In reviewing a grant of summary judgment, we consider whether the moving party left a material question unanswered. *Taylor v. Texas Gas Transmission, LLC,* 2012 Ark. App. 625, 2012 WL 5452193. Summary judgment is proper if the moving party is entitled to judgment as a matter of law. *Id.* In this case, there is no factual dispute that the timber deed was recorded and the agreement of sale was not. The only question is whether the Popes were on notice given these undisputed facts. This is a legal question, and we review it de novo. *Rice v. Welch Motor Co.,* 95 Ark.App. 100, 234 S.W.3d 327 (2006).

The Popes obtained title to the property by a special-warranty deed. That deed included a section called "Permitted Exceptions," which said the conveyance was subject to

> PLANTATION CONTRACTS: John Hancock Mutual Life Insurance Company. 179 acres. Contract length 12/29/95–12/29/2010. Recording Info— Book 107, Page 87. Retained access needed.

In addition, the recorded timber deed states that it is "subject and pursuant to the terms of that certain Agreement of Sale dated as of December 29, 1995 between Grantor and Grantee."[3] Finally, the deed reflects that its 15 year term is

3. As mentioned earlier, IP Timberlands was the grantor and Hancock was the grantee.

"[s]ubject to Grantee's right to extend the Contract for an additional period of up to three (3) years as provided therein."

■ A purchaser of land takes it with constructive notice of whatever appears in the conveyance that constitutes his chain of title. *Cochran v. Bentley,* 369 Ark. 159, 251 ₄S.W.3d 253 (2007). Further, landowners are bound by restrictions that appear in a properly recorded deed in their chain of title even though the instrument conveying title does not contain the restrictions. *Id.* So, the Popes were on constructive notice of the timber deed because it was listed in their special warranty deed. They are also bound by the restrictions contained in the timber deed, that is, Hancock's rights to the timber.

■ Next, we consider whether the Popes are bound by the agreement referenced in the timber deed. When a contract refers to another writing and makes the terms of that writing a part of the contract, the two documents become a single agreement between the parties and must be construed together. *Ingersoll–Rand Co. v. El Dorado Chem. Co.,* 373 Ark. 226, 283 S.W.3d 191 (2008). Moreover, a specific reference in the deed to a contract is an incorporation, with the terms of the contract being made a part of the deed. *See Estate of Johnson v. Carr,* 286 Ark. 369, 691 S.W.2d 161 (1985). In order to incorporate a separate document by reference into a contract, the reference must be clear and unequivocal, and the terms of the incorporated document must be known or easily available to the contracting parties. *Ingersoll–Rand, supra.*

■ Here, the timber deed unequivocally incorporated the agreement of sale. The deed stated that all rights to the property were "subject and pursuant to the terms of that certain Agreement of Sale dated December 29, 1985 ... the terms of which are incorporated herein by reference." The terms of that agreement are, therefore, made part of the timber deed. This is consistent with "the basic rule to be applied in the construction of deeds, as with other contracts, [which] is to ascertain and give effect to the real intention, of the parties." *Gibson v. Pickett,* 256 Ark. 1035, 1039, 512 S.W.2d 532, 535 (1974).

■ ₅Moreover, Ricky Pope testified that before he purchased the property, he examined the timber deed and saw that it was subject to an agreement of sale; however, Ricky never obtained a copy of that agreement even though the deed contained the phone number and address of both the grantor (IP Timberlands) and the grantee (Hancock). A buyer of land is on notice if he or she is aware of such facts and circumstances as would put a person of ordinary intelligence and prudence on such inquiry that, if diligently pursued, would lead to knowledge of those prior interests. *Bill's Printing, Inc. v. Carder,* 357 Ark. 242, 161 S.W.3d 803 (2004). The Popes cannot claim ignorance of the agreement when they failed to make a diligent inquiry into its terms. Therefore, because the agreement bound subsequent purchasers of the property[4] and because the Popes were on notice of other interests, the Popes take the property subject to the

---

4. Paragraph 5 of the agreement of sale, titled "Assignment; Sale of Premises by Seller," provides that "[i]n the event that Seller at any time after Closing conveys any portion of the Premises, the party purchasing from Seller shall assume Seller's obligations hereunder with respect to that portion of the Premises."

Below, the Popes argued that they were not bound by the agreement because they did not purchase the premises directly from the "Seller," IP Timberlands. The circuit court rejected that argument, and the Popes have not appealed it.

timber deed and its incorporated agreement's terms.

## II. *Whether Hancock Properly Extended the Deed's Term*

After the court granted partial summary judgment, the parties had a bench trial to determine whether Hancock's sending the extension check via FedEx was sufficient to extend the timber deed another year. The court ruled that Hancock made a good-faith attempt to notify the Popes and that, under the mailbox rule, Hancock's mailing of the check on December 3 operated to extend the deed.

Quiet title actions have traditionally been reviewed de novo as equity actions. *City of Cabot v. Brians*, 93 Ark.App. 77, 216 S.W.3d 627 (2005). However, we will not reverse the circuit court's findings in such actions unless the findings are clearly erroneous. *Id.* A finding of fact is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been made. *Id.*

### A. Breach of Contract

Under both the timber deed and agreement of sale, Hancock had the right to extend the timber deed. According to the agreement, "Hancock shall have the right ... to extend said initial term for three additional periods of one year each upon payment to Seller, on or before the expiration of said terms." The timber deed contains similar language. The term was set to expire on December 29, 2010. Thus, Hancock had to notify the Popes of its intent to extend the term by December 29, 2010. Under the agreement of sale, notice was to be made as follows:

Any notices which may be required or are appropriate hereunder shall be in writing or by electronic means producing a written record (facsimile machine, telex, telecopies or telegraph), personal-ly delivered or mail by Registered or Certified United States Mail, postage prepaid, return receipt requested, effective upon personal delivery, one day after mailing if by reputable overnight courier or three days after mail if by United States mail.

At trial, Trent Jernigan, Hancock's real estate counsel, testified that he prepared the notice letter and check and sent both to the Popes via FedEx next day business delivery on Friday, December 3. Jernigan stated that "[w]e sent it on a Friday and we did not send it, because it was going to a residence, for Saturday delivery." According to Jernigan, people at a residence are more likely to get packages on Monday instead of Saturday.

The Popes argue that Hancock violated the notice provision of the agreement of sale because Jernigan sent the letter and check via next business day delivery instead of overnight delivery. At the conclusion of the bench trial, the court rejected that argument and found no material breach. We agree.

When performance of a duty under a contract is contemplated, any nonperformance of that duty is a breach. *Taylor v. George*, 92 Ark.App. 264, 212 S.W.3d 17 (2005). As a general rule, the failure of one party to perform his contractual obligations releases the other party from his obligations. *Id.* Forfeitures, however, are not favored in the law, and a relatively minor failure of performance on the part of one party does not justify the other in seeking to escape any responsibility under the terms of the contract; for one party's obligation to perform to be discharged, the other party's breach must be material. *Id.*

In this case, the contract provided that notice should be sent via overnight carrier, but Hancock sent it next business day. It is unclear whether "overnight" was a delivery requirement or a description of the

type of carrier. If it was a requirement, sending the package by next business day instead of overnight delivery would be a "relatively minor failure of performance" rather than a material breach. This is especially true because Hancock sent the notice two weeks before the deadline to extend would have expired, thus causing the Popes little to no prejudice. Regardless, if the court had found a material breach, Hancock would have lost $750,000 and the Popes would have received a huge windfall (they only paid $80,000 for the property). Both forfeitures and windfalls are strongly disfavored.[5] Thus, we find no error in the circuit court's decision that Hancock had not materially breached the contract.

## B. The Mailbox Rule

Finally, we address the circuit court's application of the mailbox rule. Under the mailbox rule, a contract is completed when acceptance is placed in the mail. *Equity Fire & Cas. Co. v. Traver,* 330 Ark. 102, 953 S.W.2d 565 (1997). But the parties are free to modify this default rule in their agreement. *See id.* Here, the circuit court, applying the mailbox rule, found that Hancock extended the terms of the timber deed when it placed the letter and check in the hands of FedEx. The Popes argue that the mailbox rule does not apply if the carrier is FedEx.

First, the Popes never raised this argument to the trial court and it is not preserved. At trial, the Popes' attorney contested the method of sending the notice, but he never argued that the mailbox rule is inapplicable when FedEx is the carrier. We will not consider arguments

raised for the first time on appeal. *Marlow v. United Sys. of Arkansas, Inc.,* 2013 Ark. App. 100, 2013 WL 542866. Moreover, a party cannot change the grounds for an objection or motion on appeal, but is bound by the scope and nature of the arguments made at trial. *Id.* The Popes' argument at trial was that notice was noncompliant with the agreement, not that the mailbox rule was inapplicable. Accordingly, we do not reach the merits of this argument on appeal.

Second, even if the argument is preserved, it is unclear why the mailbox rule should be applied in this case. It is a default rule of law that the parties are free to modify. *See Equity Fire, supra.* But the agreement of sale had a provision for the notice to extend the agreement that did not require acceptance. So when the court found that Hancock did not breach the contract by sending notice via FedEx next day rather than overnight, it implicitly found that Hancock had extended the deed's term. We will affirm the trial court where it reaches the right result, even though it may have announced the wrong reason. *Dunn v. Westbrook,* 334 Ark. 83, 971 S.W.2d 252 (1998). Here, there was no need for the court to apply the mailbox rule when it already found that Hancock did not breach the notice provision of the agreement.

Affirmed.

HARRISON and VAUGHT, JJ., agree.

---

5. *See, e.g., Meers v. Tommy's Men's Store, Inc.,* 230 Ark. 49, 320 S.W.2d 770 (1959) ("Every effort should be made to interpret contracts favorably to their enforcement and to prevent forfeitures."); *Vereen v. Hargrove,* 80 Ark.App. 385, 96 S.W.3d 762 (2003) ("Forfeitures ... are not favored in the law, and in order to be enforced, they must be plainly and unambiguously provided in the contract."); *Harvison v. Charles E. Davis & Assocs., Inc.,* 310 Ark. 104, 835 S.W.2d 284 (1992) ("Principles of equity would never award such a windfall, especially when presented with an opportunity to completely satisfy all interests in the property.").