

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-12-1035

| | |
|---|---|
| CHESAPEAKE EXPLORATION, LLC<br>APPELLANT | **Opinion Delivered** January 22, 2014 |
| V. | APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT [NO. CV-10-37] |
| THOMAS WHILLOCK AND GAYLA WHILLOCK<br>APPELLEES | HONORABLE MICHAEL A. MAGGIO, JUDGE |
| | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART ON DIRECT APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL |

## RITA W. GRUBER, Judge

Appellant, Chesapeake Exploration, LLC, appeals from an order of the Van Buren County Circuit Court granting summary judgment to appellees, Thomas and Gayla Whillock, and from an order clarifying the summary judgment. The court ruled that, as a matter of law, Chesapeake could not recover a $120,000 oil-and-gas-lease bonus it had paid to the Whillocks. The court also dismissed the Whillocks' counterclaim for estoppel and misrepresentation. With regard to the summary-judgment orders, we affirm in part and reverse and remand in part. We also reverse and remand, on cross-appeal, the order dismissing the Whillocks' counterclaim.[1]

---

[1]We previously ordered rebriefing in this case and dismissal for lack of finality. *Chesapeake Exploration, LLC v. Whillock*, 2013 Ark. App. 339, and *Chesapeake Exploration, LLC v. Whillock*, 2012 Ark. App. 397. The parties have obtained a final order, and the

Mr. and Mrs. Whillock own eighty acres of land in Van Buren County. In 2005 or 2006, an oil-and-gas company other than Chesapeake asked Mr. Whillock to lease the mineral rights to his property. The transaction was never consummated because Mr. Whillock learned that he did not own the mineral rights.

In 2008, Gary Beavers, a representative of Chesapeake, asked Mr. Whillock to enter into an oil-and-gas lease. Mr. Whillock told Beavers that he did not own the mineral rights. When Beavers insisted to the contrary and offered an additional signing bonus, the Whillocks executed a five-year oil-and-gas lease with Chesapeake on January 21, 2008. That same day, Chesapeake gave the Whillocks a bonus draft in the amount of $120,000. The draft contained the following language:

> Payable on or before 10 business days sight with approval of title and form of agreement. Not subject to recall by depository bank before due date. Re-drafting privileges granted.

The record does not reveal whether Chesapeake conducted a title search of the Whillocks' minerals interests at the time this sight draft was issued, or within ten days thereafter. In any event, Chesapeake paid the draft on or about February 11, 2008. The Whillocks paid taxes on the $120,000 and spent the remainder.

On April 21, 2009—approximately fourteen months after the draft was paid—Chesapeake wrote to the Whillocks requesting a refund of the $120,000. The letter stated that a "drilling title opinion" reflected that the Whillocks did not own the minerals in the leased property. Attached to the letter was a "Release of Oil, Gas and Mineral Lease."

---

briefing error has been corrected.



The release recited that Chesapeake

> does hereby release, relinquish and surrender unto THOMAS W. AND GAYLA L. WHILLOCK, husband and wife, their successors, heirs or assigns all their right title and interest in and to that certain Oil and Gas Lease made and entered into by and between [the Whillocks] as Lessor, and [Chesapeake] as Lessee, said lease dated the 21st day of January, 2008, covering the following described property in Van Buren County in the State of Arkansas, to wit: [attached description] said Oil and Gas Lease dated January 21, 2008, being recorded in the Official Records of Van Buren County, Arkansas under Document #200881824.

Chesapeake filed the release in Van Buren County on May 22, 2009.

The Whillocks declined to refund the bonus money. As a result, Chesapeake sued them for breach of the warranty of title contained in section 13 of the oil-and-gas lease and for unjust enrichment. The Whillocks responded that Chesapeake misrepresented the facts when it induced them to sign the lease; that Chesapeake's claim was barred by estoppel; and that title work should have been completed before the bonus draft was paid. The Whillocks also filed a counterclaim for estoppel and fraud based on Gary Beavers's representation that the Whillocks had good title to the minerals.

Both sides filed motions for summary judgment. Chesapeake argued that the Whillocks undisputedly breached section 13 of the oil-and-gas lease because they did not own title to the minerals and that the Whillocks were unjustly enriched by receiving $120,000 for minerals they did not own. The Whillocks argued that the release filed by Chesapeake waived any right to sue for breach of the lease and that the doctrine of unjust enrichment did not apply because the parties had entered into an express contract. To this latter argument, Chesapeake claimed that there was no meeting of the minds on the lease contract and, therefore, unjust enrichment was available as a cause of action.

Following a hearing, the circuit court entered an order granting the Whillocks' motion for summary judgment. The court ruled that Chesapeake had "no cause of action for breach of contract against the Whillocks" because Chesapeake "rescinded the Lease through their Release of Oil, Gas and Mineral Lease on May 22, 2009." In response to the court's order, Chesapeake filed a motion for clarification and supplemental findings of fact, correctly noting that the court had not addressed Chesapeake's unjust-enrichment claim. Chesapeake also asked the court to explain why, if the lease had been rescinded, the Whillocks were not liable for restitution in the amount of $120,000.

The court issued a clarifying order in which it stated that the release filed by Chesapeake was a "general release" of all of Chesapeake's claims, including those for unjust enrichment or restitution. The court also rejected Chesapeake's argument regarding a meeting of the minds and ruled that Chesapeake's payment of the bonus draft established that Chesapeake "approved of title when it entered into the lease agreement." Chesapeake appeals from the clarifying order and from the order granting summary judgment.

We begin by addressing the effect of the release, which the circuit court characterized as a general release that waived all of Chesapeake's causes of action against the Whillocks. A general release is not restricted by its terms to particular claims or demands, and it ordinarily covers all claims and demands due at the time of its execution that were within the contemplation of the parties. *See Union Pac. R.R. Co. v. Mullen*, 966 F.2d 348 (8th Cir. 1992); 66 Am. Jur. 2d *Release* § 28 (2012).

The release filed by Chesapeake was not a general release. It did not purport to absolve

4

the Whillocks from any and all liability to Chesapeake, nor did it state that Chesapeake waived any and all claims against the Whillocks. Instead, it relinquished and surrendered Chesapeake's right, title, and interest *in the lease*. Consequently, it did not affect Chesapeake's right to pursue other, extra-contractual remedies. The circuit court therefore erred in treating the release as a general waiver of all of Chesapeake's claims against the Whillocks.

The court did not err, however, in holding that the release prohibited Chesapeake's claim for breach of the lease. The meaning of a writing should be interpreted in accordance with the plain language employed. *Po-Boy Land Co., v. Mullins*, 2011 Ark. App. 381, 384 S.W.3d 555. Chesapeake drafted the release in broad terms, stating that it "does hereby release, relinquish, and surrender" to the Whillocks "all right, title, and interest" in the lease. There were no equivocal expressions nor any reservation of Chesapeake's contractual claims. Rather, there was a complete surrender of Chesapeake's rights under the lease, which would necessarily include the right to sue for breach of the warranty of title contained in the lease's section 13. Moreover, the oil-and-gas lease itself provided that Chesapeake could "surrender or cancel" the lease by delivering or mailing a release to the Whillocks, or by placing a release of record in the proper county. These are the precise actions taken by Chesapeake. We therefore conclude that Chesapeake relinquished its right to sue for breach of the lease. *See Farmers' Cotton Oil Co. v. Brint*, 184 Ark. 1193, 40 S.W.2d 789 (1931) (holding that, where a contract was extinguished and canceled by a party, the party could not recover damages for breach of the contract).

Chesapeake argues that the release was a mere "abandonment" of the lease, which

SLIP OPINION

preserved its right to seek damages for breach. We disagree. First, it does not appear that Chesapeake raised this argument below. An appellant is bound by the scope and nature of his arguments at trial. *Pope v. John Hancock Mut. Life Ins. Co.*, 2013 Ark. App. 189, ___ S.W.3d ___. Secondly, regardless of how the release is described, its language removes any doubt that Chesapeake's rights under it were fully surrendered.

Chesapeake also contends that its intent in filing the release was not to forego its right to sue the Whillocks but to meet a statutory obligation to remove a cloud on the record owner's title, once it was determined that the Whillocks did not own the minerals. *See* Ark. Code Ann. § 15-73-203 (Repl. 2009). While this may be true, we must discern Chesapeake's intent from the plain wording it employed in the release. *Po-Boy Land Co.*, *supra*. The release clearly evidences an intent to relinquish all rights under the lease contract.

We therefore affirm the circuit court's dismissal of Chesapeake's breach–of–contract action. Our holding makes it unnecessary to reach Chesapeake's argument that the court erred in ruling that the terms of the bonus draft waived the warranty–of–title provision of the lease.

We turn now to Chesapeake's equitable claims of unjust enrichment and restitution. As stated earlier, the circuit court erred in ruling that these claims were waived in the release. But that does not end our inquiry. We must still determine if the particular facts of this case warrant summary judgment in favor of the Whillocks on these theories.

With regard to restitution, Chesapeake argues that, because the circuit court ruled that the oil-and-gas lease was rescinded, restitution must accompany the rescission in order to return the parties to the status quo. Given the court's decision to characterize the lease as

rescinded, Chesapeake could properly seek a restitutionary remedy. *See generally Maumelle Co. v. Eskola*, 315 Ark. 25, 865 S.W.2d 272 (1993); *Smith v. Walt Bennett Ford, Inc.*, 314 Ark. 591, 864 S.W.2d 817 (1993); Howard W. Brill, *Arkansas Law of Damages* § 31:3, at 573 (5th ed. 2004); Dan B. Dobbs, *Remedies* § 4.3, at 254 (1973).

The Whillocks argue, however, that Chesapeake is barred from seeking restitution because it did not plead this remedy in its complaint. We see no procedural bar. Chesapeake's complaint sought a return of the $120,000 bonus. And, Chesapeake raised the issue of restitution in response to the court's ruling that the oil-and-gas lease had been rescinded.

The Whillocks also argue that, where the right to rescind derives from a contract, any right to restitution must be derived from the same contract. They contend that the lease in this case did not provide for restitution, and they rely on *McKinney v. Jones*, 210 Ark. 912, 198 S.W.2d 415 (1946), for its language that, in the event of a mutual rescission, no claim for restitution can be made unless it is expressly or impliedly reserved in the contract. This, however, was not a case of mutual rescission but of Chesapeake unilaterally releasing the oil-and-gas-lease. Chesapeake is therefore not prohibited from asserting a claim for restitution.

Chesapeake's unjust-enrichment claim is likewise viable. Unjust enrichment applies when a party has received something of value to which he is not entitled and which he must restore. *Edwards v. MSC Pipeline, LLC*, 2013 Ark. App. 165. Arguably, the Whillocks' receipt of money for property they did not own falls within these requirements. The Whillocks contend, however, that unjust enrichment cannot apply when the parties' dealings are governed by an express contract. This argument is not well taken. While it is true that there

generally can be no recovery for unjust enrichment where there is an express contract, there are exceptions to that rule. Unjust enrichment is not barred in appropriate cases, such as where there has been a rescission at law, or the contract is void or has been discharged by impossibility or frustration of purpose, or the parties have made a mistake about something important to the contract. *See Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 381 S.W.3d 21. Here, according to the circuit court, the lease contract was rescinded or voided. Unjust enrichment is therefore not precluded as a cause of action for Chesapeake.[2]

Based on the foregoing, there is no legal impediment to Chesapeake's claims for restitution and unjust enrichment. However, we do not hold that Chesapeake should prevail on these claims as a matter of law. Restitution and unjust enrichment are equitable theories and necessarily involve a weighing of the equities as to all parties. The Whillocks have set forth several matters to be considered in deciding where the equities lie, including Chesapeake's alleged misrepresentation of the ownership of the minerals and Chesapeake's waiting more than a year before informing the Whillocks that there was a problem with the title to the minerals. We therefore conclude that fact-finding involving a weighing of the equities is necessary on these claims. Accordingly, we reverse the summary-judgment order as it pertains to Chesapeake's actions for unjust enrichment and restitution and remand for further proceedings on these issues. In light of our remand, we also reverse the circuit court's dismissal of the Whillocks' counterclaim, which set forth their assertions of misrepresentation

---

[2]Our holding makes it unnecessary to address Chesapeake's alternative contention that there was no express contract between the parties because there was no meeting of the minds.



and estoppel.

Affirmed in part and reversed and remanded in part on direct appeal; reversed and remanded on cross-appeal.

WHITEAKER and VAUGHT, JJ., agree.

*Danielson Law Firm, PLLC*, by: *Erik P. Danielson*, for appellant.

*Morgan Law Firm, P.A.*, by: *M. Edward Morgan*, for appellees.